UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JASJIT WALIA and PREET RANDHAWA,<br><br>Plaintiffs-Relators,<br><br>v.<br><br>JOSE ALEMPARTE *et al.*,<br><br>Defendants. | Case No.: 1-18-cv-00510-RJL |

**RELATORS' MOTION FOR EXTENSION OF SERVICE PERIOD, OR IN THE ALTERNATIVE, CLARIFICATION OF SERVICE PERIOD**

Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiffs-Relators Jasjit Walia and Preet Randhawa ("Relators") respectfully ask the Court to (1) extend the service deadline until the Court's decision on Relators' pending motion to amend, or (2) in the alternative, clarify the present service deadline.

***Given the below-described time sensitivity, Relators respectfully request a decision at the Court's earliest convenience.***

**I.      Background**

1.      On March 5, 2018, on behalf of the United States, Relators filed this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA").

2.      On July 18, 2023, Relators filed a First Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1). (ECF 21).

3.      Relators allege that hundreds of defendants violated the FCA by overcharging Medicare for radiopharmaceutical products utilized in nuclear stress testing. *Id*. ¶¶ 1-4. Relators allege that Defendants were only permitted to bill Medicare for the acquisition cost of the

1

radiopharmaceutical products, but that they billed Medicare at much higher rates. *Id*. Accordingly, Relators allege that Defendants violated the FCA by, *inter alia*, submitting false reimbursement claims to Medicare and that these violations resulted in tens of millions of dollars in overpayments to Defendants. *Id*. ¶¶ 7-8.

4. Pursuant to the FCA, Relators filed this lawsuit under seal to provide the Government with an opportunity to investigate Relators' claims. *See* 31 U.S.C. § 3730(b)(2). The Government's investigation led to settlement agreements with sixteen cardiologists/cardiology practices, which have collectively "agreed to pay amounts totaling $17,761,564 to resolve allegations that they each violated the False Claims Act by overbilling Medicare for diagnostic radiopharmaceuticals."[1]

5. On December 9, 2024, the Government notified the Court that it declined to intervene as to the remaining defendants and requested that the Court unseal the case. (ECF 33). On December 12, 2024, the Court entered an order in that regard. (ECF 37).

6. However, the case was not unsealed at that time. Instead, the case remained sealed until January 10, 2025. *See* Text Only Entry on January 10, 2025 ("***Case Unsealed pursuant to 37 ORDER filed 12/12/2024. (mg) (Entered: 01/10/2025)").

7. On February 11, 2025, Relators filed a Motion for Leave to Amend, in which Relator asked the Court for (1) leave to file a Second Amended Complaint and (2) permission to the serve the Second Amended Complain within 90 days of the Court's order granting Relators' motion. (ECF 46). As described in Relators' motion to amend, the most significant change in the proposed Second Amended Complaint is to substantially reduce the number of Defendants by

---

[1] DOJ, *Sixteen Cardiology Practices to Pay a Total of $17.7M to Resolve False Claims Act Allegations Concerning Inflated Medicare Reimbursements* (Dec. 20, 2024), *available at* https://www.justice.gov/opa/pr/sixteen-cardiology-practices-pay-total-177m-resolve-false-claims-act-allegations-concerning.

removing the Defendants against whom Relators do not intend to pursue claims. The First Amended Complaint names approximately 1,000 Defendants, while the proposed Second Amended Complaint names 533 Defendants. *Compare* ECF 21 *with* ECF 46-2. The proposed Second Amended Complaint does not significantly alter the nature or scope of the case as to the remaining Defendants. Rather, it provides additional clarity and details concerning Relators' allegations of falsity, materiality, and scienter. *Id*.

8. The United States – a real party in interest in FCA cases – did not oppose Relators' motion to amend. (ECF 46 at 5-6); *see U.S. ex rel. Landis v. Tailwind Sports Corp.*, 98 F. Supp. 3d 8, 11 (D.D.C. 2015) (describing that "the United States is a real party in interest even if it does not control the False Claims Act suit, as the harms redressed by the FCA belong to the government regardless of who guides the litigation" (citation and quotations omitted).

9. Relators' motion to amend remains pending.

## II. An Extension of the Service Period is Warranted

10. Federal Rule of Civil Procedure 4(m) provides that plaintiffs have 90 days to effectuate service of process. However, "if the plaintiff shows good cause," then "the court must extend the time for service for an appropriate period." *Id*. As one court describes, "[s]imply put, [g]ood cause means a valid reason for delay." *Reshard v. Stevenson*, 2020 WL 13048949, at *1 (D.D.C. Oct. 7, 2020) (quotations omitted).

11. In addition, "even in the absence of good cause, a district court may, in its discretion, grant an extension," *Parker v. Yellen*, 2023 WL 3647177, at *3 (D.D.C. May 25, 2023) (cleaned up), and courts consider various factors in exercising this "substantial discretion." *Murphy v. Wolf*, 2022 WL 4379037, at *2 (D.D.C. Sept. 22, 2022). Overall, "[t]he general attitude of the federal courts is that the provisions of Federal Rule 4 should be liberally construed in the

interest of doing substantial justice." 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083 (3d ed.) (footnote omitted).

12. As described below, there is some ambiguity as to the existing service deadline under Rule 4(m) with respect to the presently-operative First Amended Complaint. However, the Court need not resolve that ambiguity because good cause exists to extend the time for service pending resolution of Relators' motion to amend, or alternatively the Court should exercise its discretion to grant the extension under the circumstances of this case.

13. If the Court grants Relators' pending motion to amend, the Second Amended Complaint will supersede the First Amended Complaint. *See* 6B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed.) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies."); *Adams v. Quattlebaum,* 219 F.R.D. 195, 197 (D.D.C. 2004) ("The amended complaint is now the operative complaint due to its superseding nature."). Accordingly, if the Court grants Relators' motion, service of the First Amended Complaint would serve no practical purpose.

14. In addition, Relators' service of the First Amended Compliant would involve the expenditure of significant judicial and party resources that would be unnecessary if the Court grants Relators' motion to amend. For example, if Relators proceed with serving the First Amended Complaint now, they will have to ask the Clerk's Office to issue more than 500 summonses. Relators would then need to effectuate service on hundreds of Defendants located across the country through process servers or otherwise. Relators anticipate that service in this matter will be particularly cumbersome since Defendants are individuals who do not have designated registered agents. *See* Fed. R. Civ. Pro. 4(e).

15. Service now would also trigger Defendants' obligations to respond to the First Amended Complaint notwithstanding that if the Court grants Relators' motion to amend, the First Amended Complaint will be superseded by the Second Amended Complaint. *See* Fed. R. Civ. Pro. 12(a)(1)(A) (requiring response within 21 days of service). In addition, the Court would likely see motions for extensions of time from many of the 500+ defendants.

16. Further, if Relators serve the First Amended Complaint and the Court subsequently grants Relators' motion to amend, Relators would need to request an additional round of summonses from the Clerk's Office as to the Second Amended Complaint for any Defendants who had been served but had not formally appeared in the case yet. These Defendants would undergo the annoyance of being served twice in a short period of time, in addition to requiring the Clerk's Office and Relators to invest significant resources to accomplish a second round of service. For Defendants who had already been served and responded, they would need to file a second responsive pleading.

17. For these reasons, under the circumstances of this case – including the unusually large number of Defendants – good cause and an exercise of the Court's discretion support an extension on the service period until the Court's decision on Relators' motion to amend. *See Robinson v. G D C, Inc.,* 193 F. Supp. 3d 577, 581 (E.D. Va. 2016) (finding good cause for Rule 4(m) extension where "the initial delay in serving process was a cost-saving measure, in that plaintiff wanted to serve the Complaint and the Amended Complaint simultaneously, thereby avoiding the cost of serving two documents and avoiding defendants' expenditure of resources attacking a pleading that would be superseded"); *Parker*, 2023 WL 3647177, at *3 (citing the goals of Rule 1 in granting discretionary extension of service deadline); Fed. R. Civ. Pro. 1 (explaining that the Federal Rules of Civil Procedure "should be construed, administered, and employed by

the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

### III.   Alternatively, Relators Seek Clarification of the Present Service Deadline

18.   In the alternative, Relators ask the Court to clarify the deadline for service of the First Amended Complaint given the ambiguity arising from the delay between the Court's Order directing that the case be unsealed and when the case was actually unsealed.

19.   As noted, Rule 4(m) typically provides plaintiffs with 90 days to serve defendants. However, the FCA provides that "[t]he complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C § 3730(b)(2). Accordingly, "[i]n an action brought pursuant to the FCA, the … time period for service mandated by Rule 4(m) begins with the unsealing of the complaint." *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 314 (E.D. Pa. 2012) (citing cases).

20.   As described above, the Court entered an order on December 12, 2024 directing that the case be unsealed. (ECF 37). However, the case was not unsealed until January 10, 2025. *See* Text Only Entry on January 10, 2025 ("***Case Unsealed pursuant to 37 ORDER filed 12/12/2024. (mg) (Entered: 01/10/2025)"). Accordingly, the Court's unsealing order and the First Amended Complaint were not unsealed and available on the docket until January 10, 2025.

21.   Given the delay between the Court's entry of its unsealing order and the actual unsealing of the case, there is a measure of uncertainty as to when the 90-day period for service of the First Amended Complaint commenced. Consistent with the rule that the service period commences "with the unsealing of the complaint" in FCA cases, *Budike*, 897 F. Supp. 2d at 314, Relators believe the service period began on January 10, 2025, such that they have until April 10, 2025 to serve the First Amended Complaint (assuming the Court does not grant the above-

requested extension of time). This also comports with the practical reality that Relators could not request summonses from the Clerk's Office while the case remained sealed from December 12, 2025 to January 10, 2025.

22.  Accordingly, if the Court is not inclined to grant Relators' above request for an extension of the service period pending resolution of their motion to amend, Relators respectfully asks the Court to clarify that the service deadline is on April 10, 2025, *i.e.* 90 days after January 10, 2025.

### IV.  Conclusion

For these reasons, Relators respectfully request that the Court (1) extend the service deadline until the Court's decision on Relators' pending to amend or (2) in the alternative, clarify the service deadline and confirm that Relators have until April 10, 2025 to effectuate service of the First Amended Complaint.

Dated: March 7, 2025                    /s/  Jonathan Z. DeSantis

> W. Scott Simmer (D.C. Bar #460726)
> The Watergate, Suite 10-A
> 600 New Hampshire Avenue, NW
> Washington, D.C. 20037
> Telephone: 202-333-4562
> Facsimile:  202-337-1039
> Email: ssimmer@baronbudd.com
>
> **LAW OFFICE OF HENRY F. FURST**
>
> Henry F. Furst (admitted *pro hac vice*)
> One Claridge Drive
> Verona, New Jersey 07044
> Telephone: (973) 454-2620
> Email: hfurst@hfurstlaw.com
>
> **WALDEN MACHT  HARAN & WILLIAMS LLP**
>
> Daniel R. Miller (admitted *pro hac vice*)

>Jonathan Z. DeSantis (admitted *pro hac vice*)
>Walden Macht & Haran LLP
>2000 Market Street, Suite 1430
>Philadelphia, PA 19103
>Tel: (215) 825-5283
>Email: dmiller@wmhwlaw.com
>Email: jdesantis@wmwhlaw.com
>
>***Attorneys for Relators***