# Exhibit 7

RELATOR-000207

GE Healthcare
## Purchase Terms & Conditions
### Contrast Media and Nuclear Imaging Agents

*Please note: these terms apply to purchases made on or after January 1, 2017. Please contact GE Healthcare for previous versions of these terms and conditions for purchases made before January 1, 2017.*

This Agreement (defined below) is between the customer listed on the applicable GE Healthcare invoice (the "Customer") and GE Healthcare, a division of the General Electric Company and its affiliates GE Healthcare Inc., and Medi-Physics Inc. GE Healthcare agrees to provide, and Customer agrees to pay for certain GE Healthcare products listed in the applicable GE Healthcare ordering document and/or invoice referencing these terms ("Product(s)"). Throughout the Agreement, GE Healthcare and Customer are collectively referred to as the "Parties" and may be individually referred to as a "Party." "Agreement" is defined as these Terms and Conditions for Contrast Media and Nuclear Imaging Agents and the applicable GE Healthcare ordering document referencing these terms.

**1.     Payment.** Payments are due Net thirty (30) days from the date of invoice. Payment disputes must be raised by Customer before the payment due date. In the event of an undisputed late payment, GE Healthcare reserves the right to: (i) suspend performance under this Agreement; (ii) charge interest at a rate no more than the maximum rate permitted by applicable law on such unpaid amounts; and (iii) offset such unpaid amounts against any amounts GE Healthcare owes Customer.

**2.     Taxes.** Prices do not include sales, use, gross receipts, excise, valued-added, services, or any similar transaction or consumption taxes ("Taxes"). Customer acknowledges and agrees it shall be responsible for the payment of any such Taxes to GE Healthcare unless it otherwise timely provides GE Healthcare with a valid exemption certificate or direct pay permit. In the event GE Healthcare is assessed Taxes, interest and/or penalty by any taxing authority, Customer agrees to reimburse GE Healthcare for any such Taxes, including any interest or penalty assessed thereon.

**3.     Discount and Rebate Reporting.** All discounts provided are intended to comply with the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). Customer acknowledges that it is aware of its legal obligations for cost reporting, including 42 C.F.R. § 1001.952(g) and (h), and will request from GE Healthcare any information beyond the invoice needed to fulfill Customer's cost reporting obligations.

**4.     Best Price.** Regardless of any other term or condition, if any benefit, discount, or rebate (i.e. total discounts) provided under this Agreement that would: 1) result in a Product "Best Price," as the term is used in 42 U.S.C. §1396r-8(c)(1)(C); 2) increase GE Healthcare's statutorily mandated rebates; or 3) otherwise trigger an obligation by GE Healthcare to offer a similar price to any other party, then GE Healthcare shall have the right to modify such benefit, discount, or rebate on a prospective and/or retrospective basis to the extent necessary; Customer shall forward any necessary refunds to GE Healthcare within ninety (90) days of receipt of notice thereof.

**5.     Product Changes.** GE Healthcare reserves the right, without incurring any liability, to: (i) alter the specifications for any Product in a manner that does not materially affect the performance or price thereof; (ii) discontinue the manufacture or purchase of any Product; or (iii) commence the manufacture and/or sale of new products.

**6.     Clinically Appropriate.** Nothing in this Agreement shall be construed as requiring or encouraging the use of Products where they are not clinically appropriate or in the best interest of the patient. Customer and its clinical personnel will exercise their independent medical judgment in determining whether Products are appropriate.

**7.     Delivery; Transportation; Title; and Risk of Loss.** Shipping terms are FOB Destination. Title and risk of loss to Product passes to Customer upon delivery to Customer's designated delivery location. Certain Products may have product-specific delivery and transportation charges which are controlling for those certain Products.

**8.     Acceptance; Returns.** Customer shall notify GE Healthcare in writing within a reasonable time taking into consideration the nature of the Product, but under no circumstances more than thirty (30) business days from delivery, of any short delivery or defects reasonably discoverable on careful examination. In absence of such notice, Customer is deemed to have accepted the Product. GE Healthcare's sole obligation at its discretion shall be either to replace or refund the purchase price of any undelivered or defective Product. Customer has no right of return for Products that are expired, undersold, overstocked, or damaged by a party other than GE Healthcare.

**9.     Compliance with Laws.** The Parties agree to comply with all applicable Federal, State, and local laws and regulations including the federal False Claim Act, applicable state false claims act, federal Anti-Kickback Statute and corresponding safe harbor regulations, and applicable state anti-kickback laws.

**10.    Health, Safety, and Waste.** Customer shall ensure that: (i) the Products are used only as intended; (ii) the Products are handled in a safe manner; and (iii) any waste originating from the Products is disposed of in accordance with any relevant regulations.

**11.    Warranties.** GE Healthcare warrants that its Products meet applicable specifications at the time of shipment, and are manufactured, sold, and shipped materially in accordance with applicable law. ALL OTHER WARRANTIES, REPRESENTATIONS, TERMS AND CONDITIONS (STATUTORY, EXPRESS, IMPLIED OR OTHERWISE) AS TO QUALITY, CONDITION, DESCRIPTION, MERCHANTABILITY OR FITNESS FOR PURPOSE (EXCEPT FOR THE IMPLIED WARRANTY OF TITLE) ARE HEREBY EXPRESSLY DISCLAIMED.

Customer represents and warrants that it is acquiring Products from GE Healthcare pursuant to the Agreement for its own use and not for resale.

**12.    Limit of Liability.** GE HEALTHCARE'S ENTIRE LIABILITY AND CUSTOMER'S EXCLUSIVE REMEDY FOR ANY DIRECT DAMAGES INCURRED BY CUSTOMER FROM ANY CAUSE, REGARDLESS OF THE FORM OF ACTION, WHETHER IN AN ACTION IN CONTRACT, TORT, PRODUCT LIABILITY, STATUTE, EQUITY OR OTHERWISE, ARISING UNDER THIS AGREEMENT OR RELATED HERETO, SHALL NOT EXCEED THE ANNUAL CONTRACT PRICE FOR THE PRODUCT THAT IS THE BASIS FOR THE CLAIM. THE FOREGOING LIMITATION OF LIABILITY SHALL NOT APPLY TO GE HEALTHCARE'S DUTIES TO INDEMNIFY CUSTOMER IN ACCORDANCE WITH THIS AGREEMENT. THE LIMITATION OF LIABILITY SHALL APPLY EVEN IF THE LIMITED REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE.

**13.    Exclusion of Damages.** NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY UNDER THIS AGREEMENT (OR OTHERWISE IN CONNECTION WITH THE PRODUCTS AND SERVICES) FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR FOR LOSS OF PROFITS, REVENUE, TIME, OPPORTUNITY OR DATA, WHETHER IN AN ACTION IN CONTRACT, TORT, PRODUCT LIABILITY, STATUTE, EQUITY OR OTHERWISE. THE EXCLUSION OF DAMAGES SHALL APPLY EVEN IF THE LIMITED REMEDIES FAIL OF THEIR ESSENTIAL PURPOSE.

**14. Notices**. Any notice required under this Agreement will be sent by a nationally recognized overnight courier, or transmitted electronically pursuant to the terms of this Agreement. Notices will be deemed given on the date delivered to the recipient if sent by overnight courier, or when accessible electronically if transmitted electronically pursuant to the terms of this Agreement (it being agreed that the sender will retain proof of delivery or transmission, as applicable).

**15. Confidentiality**. Each party will treat the terms of this Agreement and the other party's written, proprietary business, or technical information as confidential. Customer will treat such information as confidential information whether or not marked as confidential. Neither Party shall neither use nor disclose to any third parties any such confidential information except as specifically permitted in this Agreement or as required by law (with reasonable prior notice to GE Healthcare) or as is required by the U.S. Federal government in its capacity as a customer. The receiving Party shall have no obligations with respect to any information which (i) is or becomes within the public domain through no act of the receiving Party in breach of this Agreement, (ii) was in the possession of the receiving Party prior to its disclosure or transfer and the receiving Party can so prove, (iii) is independently developed by the receiving Party and the receiving Party can so prove, or (iv) is received from another source without any restriction on use or disclosure.

**16. Force Majeure**. Neither Party is liable for delays or failures in performance (other than payment obligations) under this Agreement due to a cause beyond its reasonable control. In the event of such delay, the time for performance shall be extended as reasonably necessary to enable performance.

**17. Governing Law; Jury Trial Waiver**. The Agreement shall be governed by the laws of the State of Delaware. UNLESS OTHERWISE EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH PARTY EXPRESSLY WAIVES ALL RIGHTS TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTE ARISING UNDER THIS AGREEMENT.

**18. Indemnity**. Customer and GE Healthcare ("Indemnitor") agree, to defend, indemnify, and hold harmless the other Party ("Indemnitee") from third- party claims for damages, if and to the extent such damages are proximately caused by the Indemnitor and is determined by a court of competent jurisdiction to be the Indemnitor's legal liability, and provided that the Indemnitee takes commercially reasonable steps to mitigate any third-party damages. The indemnification obligations set forth in this Section are conditional upon the Indemnitee providing the Indemnitor prompt written notice of any claim, allowing the Indemnitor to control the defense and disposition of such claim, and cooperating with the Indemnitor in the defense.

**19. Order Confirmation and Order Acceptance**. Acceptance of Product purchase orders will be deemed to occur upon shipment of the Product pursuant to such order. Any such orders may be placed via electronically (including by email,) fax, or by phone.

**20. Waiver; Survival; Severability.** Any failure to enforce any provision of the Agreement is not a waiver of that provision or of either Party's right to later enforce each and every provision. The terms of the Agreement that by their nature are intended to survive its expiration will continue in full force and effect after its expiration. The provisions of the Agreement are severable from each other.

**21. Minimum Order of Contrast Media.** For orders less than five hundred dollars ($500) of GE Healthcare's contrast media products (i.e. Omnipaque™ (iohexol) Injection, Visipaque™ (iodixanol) Injection, Omniscan™ (gadodiamide) Injection, and Optison™ (Perflutren Protein-Type A Microspheres Injectable Suspension, USP),) the cost of freight and insurance shall be added to the invoice.

**22. Additional Terms for Nuclear Imaging Agents**. The following terms apply only to the license, purchase and use of GE Healthcare's nuclear imaging agent products (e.g. Myoview™ (Kit for the Preparation of Technetium Tc99m Tetrofosim for Injection), DaTscan™ (Ioflupane I 123 Injection) for Intravenous Use), AdreView™ (Iobenguane I 123 Injection)) and any Product or services obtained by Customer from GE Healthcare's Radio-Pharmacies ("Pharmacy") and/or directly from GE Healthcare's manufacturing facilities.

    22.1. Licensing Requirements. Prior to release of Product for shipment, Customer will send an up-to-date copy of all relevant and required licensing issued by all relevant regulating authorities directly to the purchase location.

    22.2. Containers. When GE Healthcare supplies Products in returnable containers, the containers must be returned to GE Healthcare.

    22.3. Additional Delivery Terms. Customer shall ensure that adequate and safe facilities and procedures exist for receipt of the Products at its premises at the time of delivery by GE Healthcare or its agent or carrier. Customer will be subject to additional delivery fees, including fuel surcharges if necessary, as either indicated in Exhibit A of this Agreement, or in the applicable invoice. Unless otherwise agreed to by both parties in writing, any direct shipments from GE Healthcare's manufacturing facility will be done via FedEx. Customer will be subject to additional delivery fees, including fuel surcharges if necessary, as either indicated in Exhibit A of this Agreement, or in the applicable invoice.

    22.4. Transfer Restrictions. Products shall not be sold or transferred for consideration by Customer to any third party, including any third-party radio-pharmacy, provided that Customer may dispense the Products (including resulting unit dose forms of the Products) its patients.

    22.5. Unit Dosing**.** Customer represents and warrants that it will adhere to dosing regimens determined by GE Healthcare. GE Healthcare shall have the right at reasonable times to audit the Customer's books and records that record the compounding, distribution and sales of unit doses to assure adherence to the dosing regimens determined by GE Healthcare.

**23. Additional Terms for FastLab Cassette.** The following terms apply only to the license, purchase and use of GE Healthcare's FASTlab™ Cassette Products.

    23.1. Ordering; Delivery. Customer may order FASTlab Cassette Products by either telephone at 1-866-408-7333 or via email at fastlab.cassettes@ge.com. GE Healthcare will make commercially reasonable efforts to ship all orders on the same day when placed before the cutoff time of 3pm Central Standard Time. All delivery dates are quoted in good faith, but GE Healthcare reserves the right to alter them, notifying Customer as soon as reasonably practicable. Unless otherwise stated on the invoice, Customer is subject to a delivery fee for each order of FASTlab Cassette Products.

    23.2. Additional Disclaimers for FASTlab Cassettes. IN ADDITION TO THE WARRANTY DISCLAIMERS LISTED IN THE MAIN BODY OF THIS AGREEMENT, FOR THE AVOIDANCE OF DOUBT, GE HEALTHCARE MAKES NO REPRESENTATION, OR WARRANTY THAT ANY TRACERS, DRUGS, OR SUBSTANCES PRODUCED, OR DEVELOPED USING THE FASTLAB CASSETTE PRODUCTS OR THE FASTLAB TECHNOLOGY PLATFORM WILL BE SUITABLE FOR CLINICAL USE, OR WILL HAVE BEEN MANUFACTURED IN ACCORDANCE WITH APPLICABLE LAWS GOVERNING THE MANUFACTURE AND CLINICAL USE OF SUCH PRODUCTS.

GE Healthcare Life Science- Core Imaging Terms and Conditions-United States     Page 2 of 3
(Rev 1.17)     GE Healthcare Confidential & Proprietary
RELATOR-000209

23.4.   <u>Permitted Use and Site Preparation</u>.  FASTlab Cassette Products shall only be used with GE Healthcare FASTlab platforms. Customer will be responsible, at its expense, for preparing the site where the FASTlab Cassette Products will be used in accordance with GE Healthcare's requirements and applicable laws.  GE Healthcare has the right to refuse to deliver if the site has not been properly prepared or there are any other impediments to delivery.

23.5.   <u>Environmental Health and Safety</u>.  Customer is responsible for making timely application of, obtaining, and maintaining all permits, licenses and authorizations needed to lawfully use the FASTlab Cassette Products.

23.5.1.   Customer shall have the sole responsibility and liability for full compliance with all environmental, health, safety and radiation safety laws, regulations, permits, licenses and authorizations that apply as a result of use of the FASTlab Cassette Products. Customer shall ensure that it maintains a suitable, qualified and experienced Radiation Safety Adviser to oversee all aspects of radiation related safety at Customer's facility.

23.5.2.   Customer is the generator and owner of all wastes and emissions, including radioactive wastes and emissions, created or associated with use of the FASTlab Cassette Products.  Customer shall have sole responsibility and liability for the proper storage, handling, transport, disposal of the FASTlab Cassette Products and reporting of wastes and emissions.  Customer is also solely responsible for the costs related with waste emissions and disposal.

**24.**   **Entire Agreement**.  Except as otherwise expressly stated herein, this Agreement constitutes the entire agreement between the parties respecting the subject matter.  THERE ARE NO REPRESENTATIONS, PROMISES, OR UNDERSTANDINGS RELIED UPON BY CUSTOMER THAT ARE NOT CONTAINED HEREIN.  No terms or conditions on any purchase order or other document submitted by Customer, or any prior proposal, statements, course of dealing or usage of the trade, will be part of this Agreement.  This Agreement may only be modified by a writing signed by duly-authorized representatives of each party.

**[End of Document]**

RELATOR-000210