# Exhibit 9



Tony Maffei
Director of Sales

17 Lisa Court
North Haledon, NJ 07508
phone 973.427.3779
cell 973.727.9949
fax 862.250.6631
tmaffei@triadisotopes.com
www.triadisotopes.com

RELATOR-000214

# TRIAD ISOTOPES, INC. PROVIDER AGREEMENT

**THIS TRIAD ISOTOPES, INC. PROVIDER AGREEMENT** (herein, the "Agreement") shall be effective as of July 19, 2017, (the "Effective Date") between Triad Isotopes, Inc., a Delaware corporation with its principal place of business located at 4205 Vineland Road, Suite L1, Orlando, Florida 32811 (herein, "Triad") and NJ Medcare, LLC d/b/a New Jersey Heart, a New Jersey limited liability corporation with a place of business located at 520 North Wood Avenue, Linden, New Jersey 07036 (herein, "Client").

WHEREAS, Client operates a medical imaging center that uses radioactive pharmaceutical agents to perform diagnostic and therapeutic imaging procedures on a day-to-day basis; and,

WHEREAS, Triad is a licensed, nuclear pharmacy provider that prepares and delivers radioactive pharmaceutical agents to medical imaging centers that perform diagnostic and therapeutic imaging procedures; and,

WHEREAS, Client wishes to engage Triad to exclusively provide Client with the radioactive pharmaceutical agents described herein; and,

WHEREAS, Triad has agreed to provide Client with radioactive pharmaceutical agents pursuant to the terms and conditions contained in this Agreement; and,

NOW THEREFORE, in consideration of the mutual agreements and covenants contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1) Triad Agrees to:

   a) Deliver the radioactive pharmaceutical agents described on **Exhibit "A"**, which is attached hereto, in accordance with all applicable laws, rules and regulations, Triad's standard operating procedures and the terms and conditions of this Agreement.

   b) Provide access to Triad's clinical education professionals for Client educational programs at mutually agreed upon times and locations, during the initial and any renewal term(s) of this Agreement.

   c) Invoice Client using paper invoices or an electronic system (in mutually acceptable claims submission format and frequency) for the radioactive pharmaceutical agents and related services delivered to Client, in accordance with the pricing contained on **Exhibit "A"**.

2) Client Agrees to:

   a) Engage Triad as Client's exclusive provider of the radioactive pharmaceutical agents described on **Exhibit "A"**, during the initial and any renewal term(s) of this Agreement.

   b) Remit payment to Triad in compliance with the pricing and payment terms described on **Exhibit "A"**, which is attached hereto.

07/19/17

1

3) <u>Term and Termination</u>:

   a) The initial term of this Agreement shall be for three (3) years, commencing on the Effective Date listed above. This Agreement shall automatically renew for successive one (1) year terms unless this Agreement is terminated in writing, by either party at least ninety (90) days prior to the end of the then current term.

   b) Triad or Client (the "Non-Breaching Party") may terminate this Agreement upon thirty (30) days prior written notice to the other party (the "Breaching Party") if the Breaching Party has breached any of the material terms and conditions of this Agreement and does not cure such breach to the reasonable satisfaction of the Non-Breaching Party within thirty (30) days of receipt of the Non Breaching Party's detailed, written notice of such breach.

   c) The Confidentiality and Mutual Indemnification obligations described in this Agreement shall survive the termination of this Agreement. These ongoing obligations shall be binding upon both parties, regardless of the reason for termination of this Agreement.

4) <u>Confidentiality</u>:

   a) Each party shall hold in strict confidence and not disclose to any third party, any non-public information ("Confidential Information") about the other party that is provided, shared or learned while performing their respective obligations described in this Agreement. Confidential Information shall mean all non-public information provided to, or learned by Client's agents, staff or employees about Triad, the business or customers of Triad, or the activities undertaken by Triad to fulfill the obligations described in this Agreement, whether the information is in a verbal, written, or electronic format, including, without limitation, all computer programs, flow charts, algorithms, data, databases, rules, templates, forms, protocols, methodologies, procedures, techniques and approaches relating to Triad's prices, fees, customers, business techniques, the details of this Agreement; and, all non-public information provided to, or learned by, Triad's agents, staff or employees about Client, the business or customers of Client, or the activities undertaken by Client to fulfill the obligations described in this Agreement, including, but not limited to, Client's patient records and the details of this Agreement. Confidential Information shall <u>not</u> include; i) information already known by Triad or Client at the time of disclosure by the disclosing party as shown by the receiving party's records, or ii) information that has been publicly disclosed in a lawful manner, or iii) information that is rightfully received by Triad or Client from a third party that has not breached any obligation of confidentiality existing under any contract or applicable law, when disclosing such information to Triad or Client. Client and Triad shall disclose Confidential Information only to their employees and third party consultants who need to know such Confidential Information to adequately perform their responsibilities under this Agreement.

5) <u>Dispute Resolution</u>:

   a) Both parties hereby agree that any dispute or controversy that arises between them regarding the activities described in this Agreement will be discussed between them in an attempt to find a mutually acceptable resolution of the matter. If the matter cannot be resolved amicably, it shall be submitted to binding arbitration in Orlando, Florida in accordance with the then current

commercial arbitration procedures of the American Arbitration Association. The parties shall abide and be bound by the award of the arbitrator(s) and any such award may be reduced to judgment and enforced by a court of law having competent jurisdiction.

6) <u>Mutual Indemnification</u>:

   a) Triad shall defend, indemnify and hold Client, and Client's directors, officers, employees and agents harmless from all losses, damages, costs and expenses, including without limitation, reasonable attorneys' fees and court costs, incurred by Client, when damage claims made by third parties are the direct result of Triad's negligence or willful misconduct during the performance of the activities described in this Agreement. Triad shall conduct such defense, at its sole expense, with attorneys selected by Triad and Triad shall have sole control over the conduct of such defense and all settlement negotiations on behalf of Client and Triad.

   b) Client shall defend, indemnify and hold Triad, and Triad's directors, officers, employees and agents harmless from all losses, damages, costs and expenses, including without limitation, reasonable attorneys' fees and court costs, incurred by Triad, when damage claims made by third parties are the direct result of Client's negligence or willful misconduct during the performance of the activities described in this Agreement. Client shall conduct such defense, at its sole expense, with attorneys selected by Client and Client shall have sole control over the conduct of such defense and all settlement negotiations on behalf of Triad and Client.

   c) Each party shall promptly notify the other party in writing, detailing their knowledge of any asserted or threatened claims that may give rise to these indemnification provisions and shall cooperate with the indemnifying party in conducting an investigation and defense of any such matter.

7) <u>Insurance</u>:

   a) Triad and Client shall each maintain a commercial general liability insurance policy in the amount of not less than $1,000,000 per claim and $3,000,000 in the aggregate per year during the original and any renewal term of this Agreement. This policy shall cover any loss, claims or damages caused by the insured party while performing the activities described in this Agreement. Each party shall provide the other a certificate of insurance upon written request.

8) <u>General Terms</u>:

   a) Client's failure to make any payment when such payments are due as described in this Agreement shall result in the imposition of an interest charge on any unpaid, overdue amount(s) of one and one half percent (1 1/2 %) per month. If Triad must hire a collection agency or an attorney and/or must initiate legal proceedings to collect any unpaid fees, Client shall pay, in addition to any judgment and interest for such fees, all costs and expenses of such collection efforts and/or litigation, including all reasonable attorney's fees incurred by Triad.

   b) Client is hereby advised that Client may be obligated by federal or state law to fully disclose, accurately reflect and, to the extent necessary, properly allocate the net value of any discounts, rebates or other reductions in price received pursuant to this Agreement on any claims, charges or reports made to any federal, state or other health care programs or plans requiring such disclosure

including, but not limited to, Medicare and Medicaid. Client agrees to comply with any such disclosure obligations and to make available, upon request by the Secretary of the U.S. Department of Health and Human Services or a state agency, this Agreement and any invoices or other documentation provided to Client by Triad concerning any discounts, rebates or other reductions in price provided pursuant to this Agreement. If Client requires additional information in order to comply with any disclosure or reporting obligations it may have to a federal or state health care program, Client may contact Triad to request such additional information.

c) Client and Triad hereby agree to remain in compliance with all local, state and federal laws, rules and regulations that are applicable to their respective activities as anticipated by this Agreement and as may be in effect from time to time during the term of this Agreement. If any change(s) in the local state and federal laws, rules and regulations that apply to the activities described in this Agreement materially adversely impacts the parties or makes this Agreement or the activities in this Agreement illegal, the parties hereby agree to mutually renegotiate this Agreement to conform with such changes in a commercially practical way. If the parties cannot mutually renegotiate this Agreement in such situation, the Agreement shall automatically terminate sixty (60) days after the date the parties terminate their attempts to renegotiate this Agreement due to such changed laws, rules or regulations.

d) This Agreement, including the Exhibits attached hereto, makes up the entire understanding between Triad and Client concerning the subject matter hereof. This Agreement supersedes all prior and contemporaneous documents, presentations, proposals, discussions, understandings and all other agreements and representations, whether oral or written, made by Triad or Client relating to the subject matter hereof.

e) All notices required or permitted to be given hereunder by any party hereto shall be in writing, and shall be effective upon receipt, when delivered by fax, Federal Express, or United States Mail, certified, return receipt requested, to either parties address as listed above or as changed by either party by delivering a written notice of a change of address to the other party from time to time.

f) If any provision of this Agreement is declared invalid, illegal or unenforceable, such provision shall be stricken from the Agreement and all other provisions of the Agreement shall remain in full force and effect.

g) Neither party may assign or transfer its interests in this Agreement without the prior, written consent of the other party, which shall not be unreasonably withheld. The rights and obligations described in this Agreement shall inure to the benefit and be binding upon all permitted assignees of Triad and Client. Notwithstanding the foregoing, Triad may assign this Agreement to a successor in interest, upon written notice to Client.

h) No waiver of any term of this Agreement shall be valid unless waived in writing and signed by the party against whom the waiver is sought. The failure of either party to require performance by the other party of any provision hereof shall not affect in anyway the right to require such performance at any time thereafter.

i) Signatures to this Agreement may be delivered by facsimile, by electronic mail (i.e. a "PDF" file) or by any other electronic means that is intended to preserve the original appearance and content of the executed Agreement and such delivery will have same effect as the delivery of the paper document bearing the original, handwritten signature.

4

07/19/17

RELATOR-000218

j) Nothing in this Agreement is intended to create any relationship between Triad and Client other than as independent contractors and neither party, nor any of their employees, staff, agents, officers or directors shall be construed to be the agent, employee or representative of the other.

k) This Agreement and performance of the obligations hereunder, shall be governed by, and construed in accordance with, the laws of the State of Florida.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers or representatives as of the date first written above.

For Client:

**NJ MEDCARE, LLC d/b/a NEW JERSEY HEART**

By: _____
Signature

Title: _____

Date: _____

For Triad:

**TRIAD ISOTOPES, INC.**

By: _____
Signature

Title: _____

Date: _____

## EXHIBIT "A"

### Description, Pricing and payment Terms of the Radioactive Pharmaceutical Agents

**Scheduled Products**

| Product Number | | Product Description | Strength/size | Packaging | Client Price |
|---|---|---|---|---|---|
| R005A0 | * | Sodium Pertechnetate Tc-99m HEU, Bulk | 1 mCi | mCi | $0.75 |
| R005PC | * | Sodium Pertechnetate Tc99m HEU, PRE-CAL OVER TIME LIMIT | 1 mCi | per mCi | $0.75 |
| R005TL | * | Sodium Pertechnetate Tc99m HEU, ACT OVER DOSE RANGE | 1 mCi | per mCi | $0.75 |
| R020A0 | * | Pyrophosphate (PYP) Tc-99m | 25 mCi | Unit Dose | $49.00 |
| R092A0 | * | Sestamibi (Generic) Tc-99m HEU | 30 mCi | Unit Dose | $33.50 |
| R297A0 | * | Sodium Pertechnetate Tc-99m HEU, FLOOD | 0-1 mCi | Unit Dose | $4.90 |
| R011A0 | * | Sodium Pertechnetate Tc-99m HEU | 0-25 mCi | Unit Dose | $20.50 |
| R011A1 | * | Sodium Pertechnetate Tc-99m HEU | 26-50 mCi | Unit Dose | $39.00 |
| R203A0 | * | Sodium Pertechnetate Tc-99m HEU, Flood/COR | 2 mCi | Unit Dose | $4.90 |
| R499A0 | * | Tetrofosmin (Myoview) Tc-99m HEU | 30 mCi | Unit Dose | $37.00 |

**Cyclotron Products**

| Product Number | | Product Description | Strength/size | Packaging | Client Price |
|---|---|---|---|---|---|
| R169A0 | * | Tl-201 Thallous Chloride | 1 mCi | Per mCi | $15.00 |
| R243A0 | * | Tl-201 Thallous Chloride, Flood | 0-1 mCi | Per mCi | $15.00 |

**Cold Products & Accessories**

| Product Number | | Product Description | Strength/size | Packaging | Client Price |
|---|---|---|---|---|---|
| R502A0 | | Aminophylline Inj. 500mg/20 ml vial | 1 each | Vial | $22.00 |
| R569A0 | | Dipyridamole Injection | 1 each | Unit Dose | $5.00 |
| R568A0 | | Dipyridamole Vial 50mg/10ml | 1 each | Vial | $85.00 |
| R138A0 | * | Pyrophosphate (PYP) | 1 each | Vial | $45.00 |
| R391A0 | * | Ultratag RBC (Each) | 1 each | Vial | $145.00 |

**Notes:** All items marked with * are Proprietary Products whose prices are subject to change, as described below.

All Tc99m products listed above are sourced from HEU derived material.

1) <u>Delivery Fees</u>

    a) Triad's normal operating hours (the, "Normal Business Hours") are as follows;

        i) Monday through Friday, excluding holidays, 7:00 A.M. through 4:00 P.M.

07/19/17

6

ii) Saturday and Sundays, excluding holidays, only open for deliveries scheduled as of each Friday afternoon.

b) Delivery fees shall be adjusted annually by Triad.

**Delivery Fees**

| Product Number | Delivery Description | Number | Timing | Client Price |
|---|---|---|---|---|
| R950A0 | WEEKDAY FREIGHT (Mon-Fri, scheduled) | First 3 | Per Day | $0.00 |
| R950A0 | WEEKDAY FREIGHT (Mon-Fri, scheduled) | 4+ | Each | $25.00 |
| R951A0 | WEEKEND AND HOLIDAY FREIGHT (Saturday, scheduled) | First 1 | Per Day | $0.00 |
| R951A0 | WEEKEND AND HOLIDAY FREIGHT (Saturday, scheduled) | 2+ | Each | $25.00 |
| R952A0 | WEEKEND AND HOLIDAY FREIGHT (Sunday, scheduled) | First 1 | Per Day | $25.00 |
| R952A0 | WEEKEND AND HOLIDAY FREIGHT (Sunday, scheduled) | 2+ | Each | $25.00 |
| R953A0 | BUSINESS HOURS STAT CHARGE | Each | Each | $50.00 |
| R954A0 | AFTER-HOURS STAT CHARGE | Each | Each | $85.00 |
| R872A0 | PHARMACIST CALL OUT | Each | Each | $300.00 |
| R961A0 | FREIGHT FUEL CHARGE | Each | Per Delivery | $0.00 |
| R961A1 | DAILY SERVICE FEE | Each | Per Day | $0.00 |

2) **Returns and Credits**

a) Client will receive full credit for all unit dose Tc99m labeled Sestamibi and Tetrofosmin doses that are ordered by Client, up to a collective maximum of ten percent (10%) of all such doses ordered by each Client medical imaging center, during each Triad billing cycle, when such doses are returned to Triad unopened, due to cancelled appointments, camera problems or changes in Client's patients' clinical needs.

3) **Price Adjustments**

a) The above referenced prices will not change during the first calendar year of this Agreement and will be adjusted thereafter on an annual basis by Triad, on the first day of each calendar year, upon delivery of a written notice of price changes to Client (the, "Annual Triad Price Increase").

b) Notwithstanding the foregoing, Client hereby agrees that Triad is authorized to increase Client's price of any item(s) listed on **Exhibit "A"** if Triad experiences i) an increase in Tc99m costs, and/or, ii) increases in the costs of any item marked as a Proprietary Product above, at any time during the initial or any renewal term of this Agreement. In the event that any manufacturer and/or Triad's supplier of any such Proprietary Product(s) or Tc99m notifies Triad of price increase(s) for such Proprietary Products(s) or Tc99m, Triad shall deliver a corresponding written notice of price increase(s) to Client, which will be effective immediately.

7

4) **Payment Terms**

    a)  All Triad invoices and claims shall be due and payable no later than the thirtieth (30th) calendar day after the date of each Triad invoice.

07/19/17

8

RELATOR-000222