**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JASJIT WALIA, *et al.,* | |
| Plaintiffs-Relators, v. | Case No. 1:18-cv-00510-RJL |
| JOSE ALEMPARTE, *et al.*, | |
| Defendants. | |

## DEFENDANTS MAHMOOD SHARIFF'S AND BRENDON PALTOO'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Respectfully submitted,

RIFKIN WEINER LIVINGSTON, LLC

M. Celeste Bruce (Bar No. 438343)
Michael T. Marr (Bar No. VA48536)
7700 Wisconsin Ave, Suite 320
Bethesda, Maryland 20814
mmarr@rwllaw.com
cbruce@rwllaw.com
301.951.0150 (p)
301.951.0172 (f)

Arnold M. Weiner (admitted pro hac vice)
2002 Clipper Park Road, Suite 108
Baltimore, Maryland 21211
aweiner@rwllaw.com
(410) 769-8080 (phone)
(410) 769-8811 (facsimile)

*Counsel for Defendants Mahmood Shariff, MD and Brendon Paltoo, MD*

TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

PROCEDURAL HISTORY........................................................................................... 3

STANDARD OF REVIEW .......................................................................................... 4

ARGUMENT ............................................................................................................. 6

    A.  The Complaint Should be Dismissed Because Relators Have Not Alleged
        Sufficient Facts that Survive the Public Disclosure Bar or that They are
        an Original Source ................................................................................... 6

    B.  The Complaint Should be Dismissed for Relators' Failure to State a Plausible
        Claim Against Shariff and Paltoo Under the More Lenient, Rule 12(b)(6)
        Standard of Review............................................................................... 11

    C.  The Complaint Should be Dismissed for Failure to State a Claim Under the
        False Claims Act Against Shariff and Paltoo Under Rule 9(b) ........................ 17

        1.  Relators' Grouped-Together-Lumped Together Pleading Fails Under
            Rule 9(b) ........................................................................................ 17

        2.  Shariff and Paltoo Deserve Protection from Relators' Blanket,
            Unsupported Accusation of False Claims, False Statements, and
            Reverse False Claims Under 31 U.S.C. § 3279(a)(1)(A), (B), and (G)..........21

        3.  Relators Fail to State Violation of the False Claims Act for a False Claim
            and a False Statement in Counts I and II Against Shariff and Paltoo............. 23

        4.  Relators Fail to State a Violation of the False Claims Act for Reverse
            False Claim in Count III Against Shariff and Paltoo ...................................... 25

CONCLUSION............................................................................................................ 28

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JASJIT WALIA, *et al.*, <br><br>     Plaintiffs-Relators, <br>     v. <br><br> JOSE ALEMPARTE, *et al.*, <br><br>     Defendants. | Case No. 1:18-cv-00510-RJL |

**DEFENDANTS MAHMOOD SHARIFF'S AND BRENDON PALTOO'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Defendants Mahmood Shariff and Brendan Paltoo, by the undersigned counsel, respectfully move to dismiss all claims asserted against them in the Second Amended Complaint because of the Public Disclosure Bar, Relators are not original sources, for Relators' failure to state a claim against them and to plead with the requisite plausibility and particularity required by Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). For these reasons, and for those set forth below, the Second Amended Complaint should be dismissed with prejudice as to Defendants Shariff and Paltoo. In support of this motion to dismiss, Defendants Shariff and Paltoo submit the following:

**INTRODUCTION**

Relators, two New Jersey cardiologists, Walia and Randhawa, have filed this *qui tam* action against hundreds of "cardiologists or groups of cardiologists" across 13 states and the District of Columbia, as well as a thousand John Does. The government has intervened, negotiated a settlement with certain Defendants, and then left Walia and Randhawa to their own devices.

1

Defendants Shariff and Paltoo, Maryland cardiologists, have, as a result, been caught up in this strikingly broad overreach, listed in the caption, preamble, and Relators' data compilation in Exhibit 1 of the Second Amended Complaint ("Complaint") (which means we are on the third attempts to state plausible claims) without any particularized facts about them. Despite these multiple efforts to plead something, the Complaint does not state a claim against Shariff and Paltoo that would entitle Relators to relief for violations of the False Claims Act. The Complaint says nothing of Shariff and Paltoo; and Relators truly make no effort to plead any allegations against them, or about them, much less plausible False Claims Act claims specific to them.

The Complaint fails for many reasons, but warrants only one result: that is, a dismissal of all claims against Shariff and Paltoo. First, Relators' claims are barred by the Public Disclosure Bar. Second, Relators are not original sources such that they could possibly hope to overcome the Public Disclosure Bar. Third, the Complaint fails to meet even the more lenient Rule 12(b)(6) standard of review through both a defective and factually unsupported premise and also the unprecedented aggregation of unrelated cardiologists across a third of the United States. But fourth, False Claims Act claims are subject to the heightened pleading standard of Rule 9(b) and, seeing as Relators cannot meet the basic pleading requirements of Rule 12(b)(6), Relators most certainly cannot, and do not, rise to the heightened pleading requirements of Rule 9(b). The Complaint triggers instead the protections to which Shariff and Paltoo are entitled under Rule 9(b) – protections from frivolous lawsuits like this one, from naked attempts to obtain discovery to only then determine whether Shariff and Paltoo committed any actual False Claims Act violations, and from brazen efforts to force costly litigation and defense of claims whose facts are ghosts.

At bottom, Relators cannot rely on group pleading with its theory of collective liability, then simply plead the "bare elements of [a] cause of action, affix the label 'general allegation,' and

2

expect [the] complaint to survive a motion to dismiss" *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Relators have not sufficiently pled claims under the False Claims Act in their Complaint that are not barred by the Public Disclosure Bar. Relators have not sufficiently pled claims under the False Claims Act against Shariff and Paltoo in their Complaint that pass muster under the applicable Rule 9(b) standard of review. Relators simply have not alleged material facts relevant to or supportive of the blanket and nebulous accusation that Shariff and Paltoo must have committed a fraud by the simple ministerial act of naming them in the complaint without more. As such, the Complaint should be dismissed in Shariff's and Paltoo's favor with prejudice.

## PROCEDURAL HISTORY

Relators filed their complaint on March 5, 2018. ECF No. 1. On July 18, 2023, Relators filed their first amended complaint. ECF No. 21. On April 8, 2025, Relators filed their Second Amended Complaint to allegedly "provide additional details concerning [their] allegations of falsity, materiality, and scienter." ECF No. 46 and Minute Order dated April 2, 2025. Defendants Shariff and Paltoo learned about the lawsuit in late April 2025 upon a request to waive service and thereafter filed a Waiver of Service upon request of counsel for the Relators. ECF Nos. 75 and 76. An unopposed motion for extension of time to respond until July 11, 2025, was granted. ECF No. 78.

On December 9, 2024, and again on December 23, 2024, the United States of America filed a Notice of Election to Intervene in part in this matter. ECF Nos. 33 and 39. The case was unsealed pursuant to Court Order dated December 12, 2024. On December 31, 2024, the United States of America filed a Joint Stipulation of Dismissal as to Defendants Wellspring Cardia Care, P.A. and Jorge Secada-Lovio. ECF No. 40. By order dated January 6, 2025, Defendants Wellspring Cardia Care, P.A. and Jorge Secada-Lovio were dismissed from this matter pursuant to a Settlement

Agreement entered into between the United States of America, Relators and those Defendants. ECF No. 41. On June 5, 2025, the United States of America filed a Joint Stipulation of Dismissal as to as to Defendant Fareeha I. Khan pursuant to a Settlement Agreement entered into between those parties, which was granted by the Court on June 9, 2025. ECF Nos. 109, 118. On June 17, 2025, Relators filed a Joint Motion to Stay Deadlines as to Dr. Jaime Silva for 60 Days indicating that an agreement in principle had been reached to settle Relators' claims as to Dr. Silva and was granted by the Court on June 20, 2025. ECF Nos. 157, 174.[1]

## STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), the Relators are required to plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

---

[1] On June 20, 2025, Relators filed a Notice of Voluntary Dismissal without prejudice (and without explanation) as to various Defendants: Dario Espina, Kamar Adeleke, David Grubbs, Vincent Marmo, George Moutsatsos, Ivan Pena-Sing, Ilyas Chaudhry, Miguel Depuy, Thomas Mulhearn, Cordel Parris, Michael Turner, Mohammad Chaudhry, Terrance Collins, Jeffrey Cowen, Anthony Frey, Tomas Hernandez, Scott Jerome, Vijayachandra Nair, Amir Najafi, Neena Rao, Ravinder Rustagi, Jeffrey Trabb, Julia Wen, Khalid Zirvi, Satjit Adlakha, Berthrone Mock-Muhammad, Simon Rizk, Tanveer Ahmad, Paul Barone, Raymond Catania, Michael Chen, Neeta Datwani, William Dilorenzo, Michael Dovnarsky, Krishna Duvvuri, Osler Jay Guzon, Isaac Halickman, V. Kate, Majid Khan, Ashok Kumar, Nidhi Kumar, Pervaize Latif, Shahid Latif, Vijay Marwaha, Aditya Mehra, Patrick O'Beirne, Michael Phung, Hector Rubinstein, Barry Shapiro, Bennett Shatkin, Jay Stone, Ronald Strobel, Danny Wang, Michael Gurule, Loutsios Ierides, Anthony Sandoval, Mukul Bhatnagar, Floyd Casaday, Eric Chan, John Finley, John Fornace, Gordon Fried, Lokesh Gowda, Tariq Hafiz, Paris Horan, Chau Fe Huang, Jerome Itzkoff, Vijayaraghaven Janakiraman, Michael Kayal, Sanchita Mandal, Ricci Minella, Phillip Painley, Prasant Pandey, Nehal Patel, David Poll, Thomas Power, Madhava Rao, Sunder Rao, Scott Riebel, Ellen Smith, Jack Smith, Dean Wolz, Veerunna Yadagani, Fadi Alameddine, Abdul Ali, Asif Ali, Avinash Bapat, Paris Bransford, Fardin Djafari, Ved Ganeshram, Mordecai Klein, Sanjay Kunapuli, Wayne Margolis, Angelo Nascimbene, Manish Shroff, Stephen Sigal, Rodolfo Sotolongo, Michael Venincasa, Rajesh Mehra, Nadeem Qazi, Anish Koka, Ayoubi Ali, Masroor Khan, Martha Carr, Robert Platt, Jonathan Tardos, Attiya Khan, Hugo Quintana, Andrew Keenan, Syed Shah, Robert Schnitzler, Abul Khan, Steven Feld, Neal Skop, Atif Shaikh, Jahromi Seyed Saeid Sajadi, Henry Quevedo Diaz, Sunil Patel, Bruno Manno, Matthew Evans, Jason Bradley, Kunal Bodiwala, Brian Wosnitzer, Saugato Sanyal, Muhammad Rehan Raza, Jaffar Raza, Yevgeniy Latyshev, Khaula Khalid, Umesh Katdare, Michael Kasper, Frank Evans, Ali Ahmad, Kabir Yousuf, Baran Kilical, Saifudin Hussein, Christine Dienna, Roderick Woods, Ihab Ajaaj, Percy Causey, Farhad Aduli, Michael Ryan, Maria Baldasare, Kunal Teli, Adriana Nagy, Sheikh Ahmed, Ranga Rao, and Jay Silverstein. ECF no. 217. The United States did not join in this notice of dismissal. ECF Nos. 157, 174.

face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when [the Plaintiffs] plead[] factual content that allows the court to draw the reasonable inference that [Shariff and Paltoo are] liable for the misconduct alleged." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). While the Plaintiffs are afforded those inferences that derive from the facts alleged, *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 113 (D.C. Cir. 2000), the Court does not accept those inferences unsupported by the facts alleged in the Complaint or the Plaintiffs' legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The Complaint must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In addition to these general principles, the Relators' False Claims Act claims must comply with the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 49 (D.D.C. 2014) (citation omitted); *Walsh v. JP Morgan Chase, NA*, 75 F. Supp. 3d 256, 262 (D.D.C. 2014) (Because False Claims Act is self-evidently an anti-fraud statute, complaint must comply with Rule 9(b)). Plaintiffs must therefore state with particularity the circumstances constituting the alleged fraud. Fed. R. Civ. P. 9(b). To satisfy this heightened pleading requirement, this Circuit has required plaintiffs to "'state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud' and to 'identify individuals allegedly involved in the fraud.'" *United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 117 (D.D.C. 2015) (citation omitted). That means Plaintiffs must identify the "who, what, when, where, and how of the alleged fraud." *United States v. Kellogg Brown & Root*

*Servs., Inc.*, 800 F. Supp. 2d 143, 153 (D.D.C. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root Servs., Inc.*, 525 U.S. 370, 379 (4th Cir. 2008)). In this regard, Relators must allege particular details of the scheme with reliable indicia that would allow a strong inference that Shariff and Paltoo actually submitted false claims. *U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 126 (D.C. Cir. 2015).

## ARGUMENT

### A. The Complaint Should be Dismissed Because Relators Have Not Alleged Sufficient Facts that Survive the Public Disclosure Bar or that They are an Original Source.

The Complaint should be dismissed because Relators' claims fail to meet the Public Disclosure Bar of 31 U.S.C. § 3730(e)(4)(A). Under the Public Disclosure Bar, False Claims Act claims alleging "substantially the same allegations or *transactions* . . . [that] were publicly disclosed—(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or *other Federal report*, hearing, audit, or investigation; or (iii) from the news media" shall be dismissed "unless. . . the person bringing the action is an original source of the information." *See* 31 U.S.C. § 3730(e)(4)(A).

Relators would be an original source only if: (1) "prior to a public disclosure ... [they have] voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based"; or (2) they "ha[ve] knowledge that is independent of *and materially adds to the publicly disclosed allegations or transactions*, and ... has voluntarily provided the information to the Government before filing an action." *See* 31 U.S.C. § 3730(e)(4)(B) (emphasis added).

Each of the three FCA claims against each of the hundreds of cardiologists, including Shariff and Paltoo, depend upon three sources of information: (1) publicly available Medicare claims data from Centers for Medicare and Medicaid ("CMS") websites that Relators admit they downloaded and manipulated to create Exhibit 1 to their Complaint; (2) contracts signed by

6

Relators, and one unsigned, and Relators invoices that identified what Relators paid in New Jersey for tetrofosmin and sestamibi (see Exs. 5 to Complaint); and (3) a phone call with a GE Healthcare representative (Compl. ¶¶ 91-92).

The CMS data encapsulated in Exhibit 1 to the Complaint does not meet 31 U.S.C. § 3730(e)(4)(A) or (B). The Medicare data (allegedly representing claims averages) represents public, and publicly available, transactions as part of an "other Federal report." 31 U.S.C. § 3730(e)(4)(A). The U.S. Supreme Court has defined "report" in *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011) by looking at its plain meaning: "'something that gives information' or a 'notification' . . . or '[a]n official or formal statement of facts or proceedings.'" 563 U.S. at 408 (quoting Webster's Third New International Dictionary 1925 (1986) and Black's Law Dictionary 1300 (6th ed. 1990)). The Court also noted that "[t]his broad ordinary meaning of 'report' is consistent with the generally broad scope of the FCA's public disclosure bar." *Id.*

The CMS data from CMS webpages in this case are publicly available "'administrative . . . report[s]' or 'other Federal report.'" 31 U.S.C. § 3730(e)(4)(A). *See United States ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp. 3d 111, 123-24 (D.C.C. 2015) affirmed by *United States ex rel. Oliver v. Philip Morris USA, Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016). First, there can be no dispute that the CMS webpages are "administrative": CMS is a government agency within the U.S. Department of Health and Human Services. Second, following the Supreme Court's definition in *Kirk*, the webpages constitute reports. *Id.* The CMS webpages clearly "give[] information" (as evidenced, in part, by Relators' reliance on that information). 101 F. Supp. 3d 111, 123-24 (quoting *Kirk*, 563 U.S. at 408). Specifically, CMS informs the public, of various data points in connection with physician reimbursements. Third, it is undisputed that the CMS data was available to the

public and searchable – again as evidenced by Relators' pleading and Exhibit 1. By providing information, the CMS webpages fall within the plain meaning of the word "report" within the Public Disclosure Bar. *Id.* (citing *United States ex rel. Conrad v. Abbott Labs., Inc.*, Civil Action No. 02-11738, 2013 U.S. Dist. LEXIS 26048, at *18-21 (D. Mass. Feb. 25, 2013) (holding that files with "thousands of lines of unadorned data" published online by a government agency were administrative reports); *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 518 (N.D. Tex. 2012) (holding that descriptions of new medical devices published by the FDA were administrative reports even though they were authored by the device manufacturers); *United States ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*, 739 F. Supp. 2d 396, 407 (S.D.N.Y. 2010) (holding that a searchable database of property tax information constituted an administrative report).

This publicly available CMS information generated by the government was not and could not have been disclosed to the government prior to this public disclosure by CMS. This suit is based upon publicly disclosed CMS transactions because the allegations are substantially similar to those in the public domain. *Philip Morris*, 826 F.3d at 472. If Relators are correct, and assuming *arguendo* in the loosest fashion their conclusory allegations are true, the government "already ha[d] enough information to investigate the case and to make a decision whether to prosecute or where the information could at least have alerted law-enforcement authorities to the likelihood of wrongdoing." *Id.*

Because the public disclosure inquiry "focuses not on the additional incriminating information a relator supplies, but instead on whether 'the quantum of information already in the public sphere' was sufficient to 'set government investigators on the trail of fraud,'" Relators' dependence on that "quantum of information" already created by CMS warrants dismissal. *United States ex rel. Winnon v. Lozano*, No. 17-2433 (RJL), 2023 U.S. Dist. LEXIS 164899, at *12

(D.D.C. Sep. 15, 2023) (citing *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 87 (D.C. Cir. 2014). "Specific instances of [alleged] fraud where the general practice has already been disclosed"—for example, the three doctors in paragraphs 113-115 in the complaint—do not overcome the Public Disclosure Bar. *Id.* (citing *Phillip Morris*, 826 F.3d at 472).

Relators attempt to make up for this "providing back to the government information that the government had already created and publicly disclosed" by pointing to their contracts and their invoices—while omitting any contracts and invoices for Shariff and Paltoo (or any other of the hundreds of cardiologists). *See e.g., Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 545-46 (8th Cir. 2015) (affirming dismissal where antitrust complaint failed to "even identify which of the ... defendants ... were party to the agreements"). The contracts that were signed by Relators for their New Jersey practice add nothing to the publicly available CMS data unless the contracts were the same contracts Shariff and Paltoo, two Maryland cardiologists, signed for all of the periods embraced by the complaint. Tellingly, the Complaint does not allege that Shariff or Paltoo signed any contracts with any one supplier much less the supplier from which Relators purportedly purchased radiopharmaceuticals. The invoices that Relators identified likewise add nothing to the CMS data. The Complaint does not allege what Shariff and Paltoo were supposedly invoiced by the unknown supplier at any given time, and Relators' invoices in New Jersey do not answer that outstanding question. Moreover, neither the contracts nor the invoices evidence that Relators themselves charged CMS their respective acquisition costs and were accurately reimbursed.

Relators do not bother to allege how their individual contracts and the invoices materially add to the publicly available CMS data concerning any of the defendants. What is clear: these documents simply add no value to the publicly available CMS data, do not support their false

claims causes of action, and certainly do not evidence a fraud by Shariff and Paltoo that would ground an FCA claim.

With the Public Disclosure Bar firmly fixed, Relators cannot overcome the Public Disclosure Bar as original sources because they are not original sources. An "original source" means "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action . . . which is based on the information." 31 U.S.C. § 3730(e)(4)(B). This Circuit has explained that to be an original source requires "direct and independent knowledge of any essential element of the underlying fraud transaction." *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 657 (D.C. Cir. 1994). As such, Relators must have *direct* and *independent* knowledge of the "information upon which the relators' allegations are based," not the "information on which the publicly disclosed allegations that triggered the public-disclosure bar are based"—i.e., the CMS data. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 470-72, (2007) (emphasis omitted). "*Direct*" means "the information must be first-hand knowledge." *Philip Morris*, 826 F. Supp. at 476 (quoting *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 690 (1997) and *Springfield Terminal*, 14 F.3d at 656). "*Independent*" means "the information known by [Relators] cannot depend or rely on the public disclosures." *Id.*

Relators cannot meet these requirements because they do not have direct and independent knowledge of the information on which the publicly disclosed allegations and transactions are based and do not have direct and independent knowledge about Shariff and Paltoo other than their appearance in Relators' compilation of publicly available CMS data taken from the CMS website. Relators base their allegations on what they paid for radiopharmaceuticals from their suppliers, not what Defendants Shariff and Paltoo paid from their suppliers. Relators have provided no

information from the available CMS data about what Shariff and Paltoo were paying at any one point in time to justify the violations of the False Claims Act they have generally alleged. As evidenced on the face of the second amendment and attachments, Relators simply have no first-hand knowledge concerning either Maryland cardiologist or their conduct *vis-à-vis* radiopharmaceutical purchases, supplies, claim submissions, and reimbursements, much less some variance between acquisition cost and reimbursement—which is at the heart of the lawsuit.[2] Without that direct knowledge and information, Relators cannot pretend to be original sources here.

The Relators bear the burden to demonstrate that they are an original source. *Smith v. Athena Constr. Grp., Inc.*, No. 18-cv-2080, 2022 U.S. Dist. LEXIS 54567, at *30 (D.D.C. Mar. 25, 2022) (citing *Smith v. United States*, 568 U.S. 106, 112 (2013)). They have not done so. Relators cannot qualify as original sources, and the Complaint should be dismissed.

**B. The Complaint Should be Dismissed for Relators' Failure to State a Plausible Claim Against Shariff and Paltoo Under the More Lenient, Rule 12(b)(6) Standard of Review.**

Before examining the Complaint under the heightened pleading standard applicable to the pleading under Rule 9(b), it must be said, as an initial matter, that the Relators' pleading does not even meet the requirements of a pleading under Rule 12(b)(6). The Relators have completely ignored the proscription against "labels and conclusions" and "formulaic recitations of the elements of a cause of action" in *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 555) in favor of "naked assertions of wrongdoing" instead. *Twombly*, 550 U.S. at 557. But "naked assertions of wrongdoing" require "some factual enhancement to cross the line between possibility," which

---

[2] Relators attempt to bolster their argument by the purported--albeit hearsay--statement of a pharmaceutical salesman (Compl. ¶ 91)—to no avail. Relators cannot gird themselves simply with hearsay from an employee of one of the radiopharmaceutical suppliers, "and then use discovery as a fishing expedition to determine if there was, in fact, a violation." *United States ex rel. Made in the USA Found. v. Billington*, 985 F. Supp. 604, 608 (D. Md. 1997).

11

requires dismissal, and "plausibility of entitlement" to the relief sought. *Id.* That factual enhancement in connection with Shariff and Paltoo is missing. That patent lack of knowledge and any corresponding factual allegations directed at Shariff and Paltoo demonstrate an insufficient factual basis upon which to plausibly state false claims against them. Because a claim is only plausible when the factual content of the pleading allows the Court to reasonably draw the necessary inference that the defendant is liable for the misconduct alleged, Relators have not made a plausible claim against Shariff and Paltoo.  *Iqbal*, 556 U.S. at 678.

Relators only offer naked, legal conclusions that turn on: (1) Relators practice in New Jersey, a Novitas jurisdiction, and regularly purchased radiopharmaceuticals (*Id.* ¶ 45); (2) Relators were able to purchase sestamibi and tetrofosmin for less than $40 per dose (*Id.*); and (3) Defendants in 13 states and the District of Columbia have allegedly sought and received reimbursement between $100 to $1000 per dose. (*Id.* ¶ 6). But the Complaint does not allege what any Defendant in this multitude of cardiologists and cardiology groups paid for radiopharmaceuticals at any given time and does not allege what these cardiologists and cardiology groups in these multiple jurisdictions were charged or that they were charged the same per dose as Relators in any given year or even that Defendants actually charged more than their respective acquisition costs in any given time period (which is not set out). The Complaint pleads nothing more than a logical fallacy: **A.** Two New Jersey doctors may have paid $x for tetrofosmin in various years; **B.** Others were *reimbursed* more than the two Relators from New Jersey for radiopharmaceutical doses; **C.** Therefore, these hundreds of cardiologists and cardiologist groups, and a thousand more John Does, must have submitted false claims. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is not bound to accept a legal conclusion couched as a factual allegation). The Court should not accept such a fallacy when the fallacy is unsupported by facts set out in the Complaint and where

Relators omit almost every conceivable fact necessary to state a claim against any one Defendant, much less Shariff and Paltoo. This fallacy is too speculative to state a claim against Shariff and Paltoo. *See Nova Oculus Partners, LLC v. United States FDA*, Civil Action No. 20-cv-1174 (DLF), 2020 U.S. Dist. LEXIS 231394, at *11 (D.D.C. Nov. 18, 2020) (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) and *Twombly*, 550 U.S. at 555).

The Complaint does not allege that the hundreds of cardiologists and cardiology groups, and thousand John Does, purchased from Cardinal Health, Inc. and/or GE Healthcare—only "most," whatever and whoever that means (*Id.*¶ 48). The Complaint does not separate those cardiologists and cardiology groups who purchased from Cardinal Health, Inc. and GE Healthcare from those cardiologists or cardiology groups or John Does who did not. Relators do not allege from whom the individual defendants purchased nor is there an allegation identifying their respective acquisition costs. Nor does the Complaint allege how those two groups are the same or engaged in the same fraudulent scheme. Relators ask the Court to ignore these groups and assume that the acquisition cost was uniform, without variance, for each cardiologist, each cardiology group, and each John Doe, in each state, and at every given time period. That logical leap is ridiculous, and the Court should decline to make it in connection with the inarticulate claims against Shariff and Paltoo.

Liability is personal. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Relators' allegations based on "group pleading" is insufficient for Rule 12(b)(6) purposes. *Lepore v. NL Brand Holdings LLC*, 2017 U.S. Dist. LEXIS 163035, at *20 (S.D.N.Y. Sep. 28, 2017) (citation omitted); *Pierce v. Porter*, 2023 U.S. Dist. LEXIS 100049, 2023 WL 3901254, at *3 (E.D. La. June 8, 2023) ("[A] complaint that simply lumps defendants together and asserts identical allegations as to each without distinction is improper under *Iqbal* and *Twombly* because it prevents

the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions."). Because the notice pleading requirements of Rule 8(a) and Rule 12(b)(6) entitle Shariff and Paltoo to know what each of them did that is alleged to be wrongful, Relators' allegations based on a "theory of collective responsibility" cannot survive a motion to dismiss. *Id.* (affirming dismissal of complaint because "a complaint based on a theory of collective responsibility must be dismissed.") ("A contention that 'the defendants looted the corporation'—without any details about who did what—is inadequate. Liability is personal. An allegation that someone looted a corporation does not propound a plausible contention that a particular person did anything wrong."). Given the Complaint's use of a list Defendants named individually (and the John Does) and thereafter the collective term "Defendants" with no distinction as to what acts and when are attributable to whom, the pleading does not satisfy Rule 8 or Rule 12(b)(6). *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Among the hundreds of cardiologists and cardiology group, and John Does, Relators could only muster "facts" albeit insufficient against three individual doctors: one in New Jersey, another in Oklahoma, and one more in Texas for three different years with average reimbursements only. Compl. ¶¶ 113-115. *See In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F. 4th 315, 320 (6th Cir. 2023) ("[A] plaintiff cannot sue ten defendants--by lumping them all together in his allegations--when the more particular facts would allow him to proceed against only one."); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (describing the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions").

The "facts" for these three individual Defendants omit, however, (i) what these three physicians paid for the radiopharmaceutical sestamibi or tetrofosmin, (ii) whether the acquisition

cost was the same for these three states for each of the different years alleged, (iii) who they each paid (whether Cardinal or GE Healthcare or some other supplier), and (iv) what acquisition cost was represented to CMS. The Relators do not address the factual gaps, and therefore no inference can be drawn from the paucity of factual allegations that even these three individual physicians were "engaged in the same scheme by billing Medicare at far above than their acquisition cost for the RPs and by receiving average Medicare reimbursement of at least $100/dose"—much less two listed Maryland cardiologists, Shariff and Paltoo for which no allegations are provided. *Winnon v. Lozano*, 2023 U.S. Dist. LEXIS 164900, at *23 (citing *United States ex rel. Integra Med. Analytics, L.L.C. v. Baylor Scott & White Health*, 816 Fed. Appx. 892, 898 (5th Cir. 2020) ("[Relator's] examples simply give some identifying patient information and pair it with a diagnosis. No example gives any indication about what makes it a false claim. The claims of falsity are simply conclusory.").

Relators fail to make any factual connection with the claims data attached to the Complaint and the price paid by these three cardiologists, much less the balance of the cardiologists, cardiology groups, and John Does, or Shariff and Paltoo. *See e.g., Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (affirming dismissal of Section 1983 complaint that "consist[ed] almost entirely of non-specific conclusory allegations -- mostly against the Officer Defendants as a group -- and fail[ed] to provide enough factual detail to support a plausible claim that any of the Officer Defendants" were liable for the alleged constitutional violations).

Relators similarly fail to connect the "facts" of these three cardiologists to the other defendants in their respective states, New Jersey in 2014 with an average reimbursement over 664 claims, Oklahoma in 2019 with an average reimbursement 540 claims, and Texas in 2022 with an average reimbursement over 95 claims (*Id.* ¶ 113-115)—such that no common experience or

scheme or link can be surmised for those three states, any particular physician in those state, years, *actual* reimbursements, or submitted claims. This unresolved mystery for these three states (New Jersey, Oklahoma, and Texas) extended to the horde of Defendants in different states, unknown suppliers, unknown years, and unknown claims represents the fatal "threadbare recital" the plausibility standard of *Twombly* and *Iqbal* rejects. Narrowing the focus to either Shariff or Paltoo in Maryland with no known years, suppliers, reimbursements, or claims lays the Complaint bare. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1984) (court does not accept inferences "unsupported by facts set out in the complaint.") and *Iqbal*, 556 U.S. at 679 ("Threadbare recitals . . . supported by mere conclusory statements do not suffice"): "Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief must include such particulars." *Atkins v. Hasan*, No. 15 CV 203, 2015 U.S. Dist. LEXIS 80176, at *7 (N.D. Ill. June 22, 2015).

In this case, Relators rely on the unsupported, *ipse dixit* assertion that all Defendants' circumstances (whether it be supplier, acquisition cost, claim submitted, and regardless of time or place) are identical in all respects. Without any additional allegations regarding Shariff and Paltoo showing that Shariff's and Paltoo's circumstances are identical to Relators (who allegedly did not commit a fraud) or any other Defendant (who allegedly did), then Relators have plead nothing more that the "[t]hreadbare recitals" of a "legal conclusion" . . . "devoid of further factual enhancements" that cannot support these three causes of action against Shariff and Paltoo even under a Rule 12(b)(6) analysis. *Cf. Joyner v. Morrison*, 2025 U.S. App. LEXIS 15189 at *8-9 (D.C. Cir. June 20, 2025) (quoting *Twombly*, 550 U.S. at 556 and *Iqbal*, 556 U.S. at 678).

Absent some factual enhancements linking Shariff and Paltoo to these spotty "facts," the Complaint is simply insufficient to state a claim even under the more liberal Rule 12(b)(6) standard of review. Relators have failed to plead "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Relators have only expressed a mere possibility that an amorphous mass of cardiologists have done something wrong. While courts do not require "heightened fact pleading of specifics" under a Rule 12(b)(6) review, Relators must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. The Complaint never rises above rank speculation as to Shariff and Paltoo. As a result, Relators have not plead plausible, factually based claims against Shariff and Paltoo and the Complaint must be dismissed under Rule 12(b)(6).

**C. The Complaint Should be Dismissed for Failure to State a Claim Under the False Claims Act Against Shariff and Paltoo Under Rule 9(b).**

*1. Relators' Grouped-Together-Lumped Together Pleading Fails Under Rule 9(b).*

Relators' pleading defects identified above are more particularly exposed when the heightened pleading standard of Rule 9(b) is applied, as it must be. Relators' Complaint must comply with the heightened pleading standard of Rule 9(b) because False Claims Act claims sound in fraud. *Tailwind Sports Corp.*, 51 F. Supp at 49 (citation omitted); *Walsh*, 75 F. Supp. 3d at 262 (Because False Claims Act is self-evidently an anti-fraud statute, complaint must comply with Rule 9(b)). If Relators have not met the more lenient Rule 12(b)(6) standard of review, *supra*, Relators cannot meet Rule 9(b) requirements; and they do not. A dismissal is appropriate.

Here, Relators must state with particularity the circumstances constituting the alleged fraud. Fed. R. Civ. P. 9(b), which, according to this Circuit, means Relators must "state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud" and to "identify individuals allegedly involved in the

fraud." *Symantec Corp.*, 130 F. Supp. 3d at 117 (quotation omitted). That is to say, Plaintiffs must identify the "who, what, when, where, and how of the alleged fraud." *Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d at 153  (quoting *Kellogg Brown & Root Servs., Inc.*, 525 F.3d at 379). To satisfy Rule 9(b), "the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). In this regard generally, to survive a motion to dismiss, Relators needed to have alleged, but did not, particular details of the scheme with reliable indicia that would allow a strong inference that defendants *Shariff and Paltoo* actually submitted false claims to the government. *United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 126 (D.D.C. 2015). But Relators have failed to do so in connection with either Shariff or Paltoo.

The conclusory allegations in the Complaint do not permit any finding in connection with Shariff and Paltoo who are merely listed as possible defendants without more. Relators have not alleged either Shariff or Paltoo (1) submitted a claim to the government, (2) the claim was false, and (3) Shariff or Paltoo knew the claim was false. Nor have Relators alleged that Shariff or Paltoo had actual knowledge that any claim submitted was false or acted in deliberate ignorance or recklessly disregarded the truth or falsity of the information in the claim (currently unpled). Instead, Relators have impermissibly grouped-together and lumped-together hundreds of named Defendants and a thousand John Does across 13 states and the District of Columbia, and intentionally obscured which Defendants are alleged to have engaged in which conduct or which defendants are called to answer to which claims. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Sears v. Likens*, 912 F.2d 889, 892 (7th Circ. 1990) (a

18

complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, insufficient under Rule 9(b)); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."); *Brooks v. BlueCross and BlueShield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (Rule 9(b) not met when plaintiffs lumped together all defendants in their allegations of fraud). It is not enough to lump together dissimilar defendants—dissimilar on acquisition cost, reimbursement, year or time, supplier, and jurisdiction—and claim generally "everyone of these hundreds and hundreds of cardiologists did everything"—and ask the Court to make a leap in the dark that Shariff and Paltoo should be included in this lawsuit.

This grouped-together/lumped-together pleading problem is further aggravated because multiple defendants have been dismissed from the lawsuit, but—other than three individual doctors specifically identified in paragraphs 113-115 and the patent defects in those allegations (*supra* )—the remaining Defendants are similarly left in the dark. Relators' "threadbare recitals" and mere conclusory statements, coupled with no mention of Shariff or Paltoo, are *unreliable* indicia of a false claim for which Shariff and Paltoo could not be deemed liable for violations of 31 U.S.C. §§ 3729(A), (B) or (G) under this pleading—but reliable indicia that Relators have failed to plausibly state a claim under the False Claims Act. The details of Shariff's and Paltoo's involvement are missing; the Complaint is equally bereft of "reliable indicia that lead to a strong inference that [false and fraudulent] claims were actually submitted" by Shariff and Paltoo. *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

19

This mob of non-specific allegations alleged against a mob of unrelated "Defendants" warrants dismissal in favor of Shariff and Paltoo. The Complaint does not adequately plead where Shariff and Paltoo fit into these generalized allegations in non-specific times and place. The Complaint simply omits the necessary who, what, where and how details and never attempts to make the connection between Shariff and Paltoo's treatment and care necessary to plead a false claim for payment. The allegations of the Complaint avoid the particularity required by Rule 9(b) and Shariff's and Paltoo's motion to dismiss should be granted.

The First Circuit has illustrated what must be present under Rule 9(b) and by doing so has highlighted where this Complaint collides with Rule 9(b) and fails in connection with Shariff and Paltoo:

> [A] relator must provide details that identify particular false claims for payment that were submitted to the government. In a case such as this, details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of the money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practice and the submission of claims based on those practices are the types of information that may help a relator state his or her claims *with particularity*.

*United States ex rel Ge v. Takeda Pharm Co., Ltd.*, 737 F.3d 116, 123 (1st Cir. 2013) (emphasis added) (quotation omitted). Even if this is not a checklist to be rigidly applied, as to Defendants Shariff and Paltoo specifically, none of these factors is addressed to Shariff and Paltoo. Electing to omit all of the factors, however, Relators have not pled a possible fraud by the two Maryland cardiologists, much less reaching plausibility. *Iqbal*, 556 U.S. at 678 (plausibility requires more than sheer possibility). What we are left with in the Complaint are conclusory allegations and repeat references to 'schemes'—with no factual content—fails under Rule 9(b) and must be dismissed. *Id.* at 679 ("[O]nly a complaint that states a plausible claim for relief survives.")

*2. Shariff and Paltoo Deserve Protection from Relators' Blanket, Unsupported Accusation of False Claims, False Statements, and Reverse False Claims Under 31 U.S.C. § 3279(a)(1)(A), (B), and (G).*

Relators assert three False Claims Act Counts painting all defendants with a broad brush "but never uses a small brush to fill in the details" of Shariff and Paltoo. *United States v. Heritage Operations Grp., LLC*, No. 20-cv-1169, 2024 U.S. Dist. LEXIS 34189, at *25 (N.D. Ill. Feb. 28, 2024); *WM High Yield Fund v O'Hanlon*, 2013 U.S. Dist. LEXIS 90323, *43 (E.D. Pa. June 27, 2013) (broad brush accusation of fraud is not enough). Despite the blanket accusation against scores and scores of defendants, both named and unnamed, of defrauding the government,[3] Shariff and Paltoo "have the same protections as defendants sued in other contexts." *Chebrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011); *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476 (2d Cir. 1995); *United States ex rel. Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th Cir. 1994). In that regard, Rule 9(b) is meant to protect defendants like Shariff and Paltoo from frivolous or strike lawsuits and to avoid harm to their goodwill and reputation; and equally applicable here, to eliminate fraud actions in which all the facts related to Shariff and Paltoo are learned after discovery after the complaint was filed. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784, 789 (4th Cir. 1999). "If allowed to go forward, Relators' FCA claim[s against Shariff and Paltoo] would have to rest on facts learned through the costly process of

---

[3]  *See Smith v. McMaster*, No. C/A: 8:17-2549-JMC-TER, 2017 U.S. Dist. LEXIS 182954, at *11 (D.S.C. Oct. 4, 2017) (Where only listed as defendants in the Complaint with no allegations regarding those defendants, those defendants entitled to summary dismissal); *Sisenstein v. Smolinsky*, No. 9:19-CV-1157 (TJM/CFH), 2019 U.S. Dist. LEXIS 232454, at *12-13 (N.D.N.Y. Nov. 27, 2019) (same).

discovery. This is precisely what Rule 9(b) seeks to prevent." *Kellogg Brown & Root, Inc.*, 525 F.3d at 380.

In consideration of what is now the second amendment, Relators have made clear they cannot plead additional facts that would support their claims against Shariff and Paltoo. The additions to the Complaint are Relators' compilation (Ex. 1 to the Complaint) that lists Shariff and Paltoo, among other Maryland doctors, but leave out any supplier, what the acquisition cost was from any supplier at any time, or an explanation for the variance in payments received among the various cardiologists in the various states; Novitas webpages (Exs. 2 and 3 to the Complaint) where Novitas promises to pay the acquisition cost, invoices to Relators and their New Jersey practice (Exs. 5, 10-14), contracts signed and unsigned (Exs. 6-9), and a blank claim sheet (Ex. 14). The compilation at Exhibit 1 does not have a column for total acquisition cost from Shariff's or Paltoo's supplier for any year to compare with the actual reimbursement allegedly received to determine whether Shariff and Paltoo submitted a claim for more than the acquisition cost from the unknown supplier at any given year (since no column exists for supplier either).[4]  Opening a web browser, tying in CMS or CMS dataset or *https://data.cms.gov*, downloading a spreadsheet, and pasting it into the Complaint was not information created by Relators' experience; it is grossly insufficient under Rule 9(b). *See United States ex rel. Kolchinsky v. Moody's Corp.*, 238 F. Supp. 3d 550, 560 (S.D.N.Y. 2017).

None of the exhibits, and none of the allegations, state or show with particularity what Shariff's and Paltoo's acquisition costs were, what should or should not have been included in any

---

[4] Relators' allegations mislead the reader. In ¶ 123, Relators use a per dose amount of $40 by way of example. Eight paragraphs later, in ¶ 131, Relators state: "For example, a Defendant who submitted a claim representing that his acquisition cost was $100 – when in fact his acquisition cost was $40 has submitted a false claim." That contention is inaccurate or grossly exaggerated. Relators had already alleged in ¶ 66 that sestamibi (or A9500) is given in two doses. Using Relators' example, the acquisition cost would be $80.00, not $40. Similarly, the spreadsheet's arithmetic is meaningless without an accurate acquisition cost, which is blatantly missing, that provided the information within a claim critical to a false claim under the False Claims Act.

claim, how any reported acquisition cost was calculated, why any such calculation was improper and whether Shariff or Paltoo had any knowledge of what was claimed. A complaint based on these say-nothing-do-nothing exhibits "is emblematic of the paradigmatic 'fishing expedition' Rule 9(b) that is insufficient as a matter of law to survive dismissal in a False Claims Act case." *Kolchinsky*, 238 F. Supp. 3d at 560.

   3.  *Relators Fail to State Violation of the False Claims Act for a False Claim and a False Statement in Counts I and II Against Shariff and Paltoo.*

   The Sections above addressed the multiple grounds available to the Court for dismissing the Complaint; they need not be repeated here in full though they apply. The point to be made in addition to these other grounds is the absence of any allegations of Shariff's and Paltoo's knowledge. Analyzing their knowledge of a claim is fruitless because nothing is alleged about any claim inconsistent with their acquisition costs Shariff and Paltoo submitted. But the academic exercise bearing in mind a fundamental gap in the pleading is important to show more facts particularized to Shariff and Paltoo that Relators have omitted.

   The False Claims Act, 31 U.S.C. § 3279 *et seq.* prohibits "(A) knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval; [and] (B) knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3279(a)(1)(A)—(B). The essential elements of an FCA claim are as follows: "(1) the defendant submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false." *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 91 (D.D.C. 2014) (internal quotation marks omitted). A defendant "knows" a claim is false if he or she "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). *United States ex rel. K & R Ltd. P'ship v. Massachusetts*

*Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008); *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 49 (D.D.C. 2017).

Implicit in this three-part test of "knowing" is Shariff's and Paltoo's knowledge and subjective beliefs—"on what they thought and believed." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749, 751 (2023). Yet again, in still one more defective aspect of this pleading, nothing of what Shariff knew, thought, or believed when presenting the claim can be found in the Complaint. 598 U.S. at 752 ("the focus is not, as respondents would have it, on *post hoc* interpretations that might have rendered their claims accurate. It is instead on what the defendant knew when presenting the claim.").

For the first test, "actual knowledge" addresses whether Shariff or Paltoo were aware of the information. *Id.* at 751 (citations omitted). Shariff's and Paltoo's actual knowledge or awareness is not alleged. The second test—"deliberate ignorance"—signifies Shariff's and Paltoo's "awareness of a substantial risk that their statements are false but intentionally avoid[ed] taking steps to confirm the statement's truth or falsity." *Id.* Relators offer no facts particular to Shariff and Paltoo that they acted in deliberate ignorance of an albeit unpled false statement or were aware of any substantial risk that their unpled claim submissions might be false. The third test—"reckless disregard"—means those defendants "who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Id.* at 740. Here too, the Complaint is silent as to Shariff and Paltoo.

Silence in this pleading on a critical and central element of a False Claims Act claim— Shariff's and Paltoo's knowledge—is damning. Relators make no effort to satisfy any one of these three states of mind. But this knowledge "requirement helps to ensure that innocent mistakes made in the absence of binding interpretive guidance are not converted into FCA liability." *Nat'l Urb.*

*League v. Trump*, Civil Action No. 25-471 (TJK), 2025 U.S. Dist. LEXIS 83732, at *88 (D.D.C. May 2, 2025) (citing *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015); *see also id.* at 288 (FCA does not "reach those claims made based on reasonable but erroneous interpretations of a defendant's legal obligations").

Given this distinction, the rationale for Relator's ignoring pleading any facts of Shariff's and Paltoo's knowledge becomes clear—they have no allegations to make against Shariff and Paltoo. Without "some facts to support" allegations of Shariff's and Paltoo's knowledge, the Complaint "stops short of the line between possibility and plausibility of entitlement to relief." *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, No. 22-cv-01419 (DLF), 2025 U.S. Dist. LEXIS 38647, at *13 (D.D.C. Mar. 4, 2025) (citing *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 80 (D.D.C. 2019), *aff'd sub nom. Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, No. 19-7124, 2020 U.S. App. LEXIS 4846, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020) (quoting *Iqbal*, 556 U.S. at 678) and *S.H. v. District of Columbia*, 270 F. Supp. 3d 260, 273 (D.D.C. 2017) (observing that Rule 9(b) "does not mean [a plaintiff] may rely on conclusory allegations of knowledge" (citations omitted)). The claims must therefore be dismissed.

4.   *Relators Fail to State a Violation of the False Claims Act for Reverse False Claim in Count III Against Shariff and Paltoo.*

All the arguments supporting a dismissal of the Complaint (i.e., public disclosure bar, no original source, implausible claim under Rule 12(b)(6), and no claim under Rule 9(b)) apply with equal force to Count III—and call for the summary dismissal of that count. But Count III is worth commenting on because the boilerplate nature of that count exposes the rot within this pleading.

Again and again, Relators do not point to any facts sufficient to support any violation of the False Claims Act, or any particularized facts about Shariff and Paltoo, but instead rely on a single boilerplate allegation that simply parrots this particular element from a single section of the

False Claims Act. Much more is required of Count III under Rule 9(b). A "formulaic recitation of the elements of a cause of action will not do." *Iqbal* 556 at 678. There must be facts that would allow this Court to draw a reasonable inference that Shariff or Paltoo are liable for the reverse false claim. *Id.* Here, the Court must dismiss the reverse false claim because such a claim is not even conceivable under these facts, much less a crossing the line "from conceivable to plausible." *Id.* at 680.

In Count III, Relators allege a "reverse false claim," whereby Defendants knowingly made false statements to avoid having to pay an amount owed to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G). *Id.* ¶ 174. But other than a bald recitation of the statutory language, Relators do not offer any allegations than the ridiculous request to divine from "each and every allegation above as if fully set forth herein." *Id.* at ¶ 173. Divination would not call forth facts in "each and every allegation" that would support a reverse false claim under Rule 9(b). None of the required, "who, what, when, and how" in connection with a reverse false claim committed by Shariff and Paltoo are alleged, anywhere. *See e.g., Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 115, 114 (D.D.C. 2009) (with particularity, complaint must state who, what, when, where, and how with respect to the circumstances of the alleged False Claims Act fraud).

Under § 3729(a)(1)(G), a "person" who (1) "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government" or (2) "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government" is "liable to the United States." 31 U.S.C. § 3729(a)(1)(G). A claim under subparagraph G is known as a reverse false claim. *See e.g., Scollick ex rel. United States v. Narula*, No. 14-cv-1339 (RCL), 2020 U.S. Dist. LEXIS 208604, at *5 (D.D.C. Nov. 6, 2020). In contrast to the claims described above,

"[a] reverse false claim is any fraudulent conduct that 'results in no payment to the government when a payment is obligated.'" *Pencheng Si*, 71 F. Supp. 3d at 88. "Whereas a traditional false claim action involves a false or fraudulent statement made to the government to support a claim for money from the government, a typical reverse false claim action involves a defendant knowingly making a false statement in order to avoid having to pay the government when payment is otherwise due." *Id.*

There is no construction of the "facts," such as they are, in the Complaint, that suggests Shariff and Paltoo made "a false statement in order to avoid having to pay the government when payment is otherwise due," the content of that false statement, the timing of that false statement— and equally important for a reverse false claim—what payment obligation Shariff and Paltoo owed to the government and what exactly Shariff and Paltoo were allegedly trying to avoid. It is therefore only a guess what Relators are claiming in Count III.  If an individual Defendant has to guess, the pleading fails under Rule 8(a), 12(b)(6) and 9(b)). *Anderson v. USAA Cas. Inc. Co.*, 221 F.R.D. 250, 253 (D.C. Cir. 2004) (citing *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (recognizing that Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged fraud).

If Relators mean to rest the reverse false claim on an argument "that an obligation arose out of Defendants' concealment of their allegedly fraudulent activity," such a position has already been rejected and a motion to dismiss granted in *United States ex rel. Scollick v. Narula*, 215 F. Supp. 3d 26, 41 (D.D.C. 2016) because "by this logic, just about any traditional false statement or presentment action would give rise to a reverse false claim action; after all, presumably any false statement actionable under sections 3729(a)(1)(A) or 3729(a)(1)(B) could theoretically trigger an obligation to repay the fraudulently obtained money." *Id.* (quoting *Pencheng Si*, 71 F. Supp. 3d at

97). Other than this guess, Count III appears to be interposed for no proper purpose other than to compel Shariff and Paltoo to expend time and money moving to dismiss this claim.

## <u>CONCLUSION</u>

Relators have not sufficiently pled claims under the False Claims Act in their Complaint that are not barred by the Public Disclosure Bar. Relators have not sufficiently pled claims under the False Claims Act against Shariff and Paltoo in their Complaint that pass muster under the applicable Rule 9(b) standard of review. For these reasons, and those set out more particularly above, the Complaint should be dismissed with prejudice as to Defendants Shariff and Paltoo.

Dated: July 11, 2025                    Respectfully submitted,

                                        RIFKIN WEINER LIVINGSTON, LLC

                                        /s/      Michael T. Marr
                                        M. Celeste Bruce (Bar No. 438343)
                                        Michael T. Marr (Bar No. VA48536)
                                        7700 Wisconsin Ave, Suite 320
                                        Bethesda, Maryland 20814
                                        mmarr@rwllaw.com
                                        cbruce@rwllaw.com
                                        301.951.0150 (p)
                                        301.951.0172 (f)

                                        Arnold M. Weiner (admitted pro hac vice)
                                        2002 Clipper Park Road, Suite 108
                                        Baltimore, Maryland 21211
                                        aweiner@rwllaw.com
                                        (410) 769-8080 (phone)
                                        (410) 769-8811 (facsimile)

                                        *Counsel for Defendants Mahmood Shariff, MD and Brendon Paltoo, MD*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 11, 2025, that I filed the foregoing with the Clerk of

the United States District Court for the District of Columbia using the CM/ECF system, which

will notify all counsel of record of this filing.

/s/     Michael T. Marr
Michael T. Marr (Bar No. VA48536)