**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.,* | § | |
| **JASIT WALIA,** *et al.* | § | |
| | § | |
| **Plaintiffs-Relators,** | § | |
| **v.** | § | **CASE NO. 1:18-cv-0510-RLJ** |
| | § | |
| **JOSE ALEMPARTE, et al.** | § | |
| | § | |
| **Defendants.** | § | |

<u>**GUILLERMO REYES'S MOTION TO DISMISS RELATORS' SECOND AMENDED
COMPLAINT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), GUILLERMO

REYES ("REYES" or "Defendant") through his counsel, files this Motion to Dismiss the Second

Amended Complaint and in support thereof rely on the accompanying memorandum of law and

the pleadings in this action.

Dated: July 15, 2025

Respectfully Submitted,

THE CORTEZ LAW FIRM
1202 South Alamo Street
San Antonio, Texas 78210
Telephone No.: (210) 273-2277
Facsimile  No.: (210) 504-1523
adam@cortezlawfirm.com

By:      <u>**/s/ Adam C. Cortez**</u>
          ADAM C. CORTEZ
          Bar ID: TX0191
          Texas Bar No.: 04844650

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA *ex rel.,*** | § | |
| **JASIT WALIA, *et al.*** | § | |
| | § | |
| **Plaintiffs-Relators,** | § | |
| **v.** | § | **CASE NO. 1:18-cv-0510-RLJ** |
| | § | |
| **JOSE ALEMPARTE, et al.** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OF LAW IN SUPPORT OF GUILLERMO REYES'S MOTION TO DISMISS RELATORS' SECOND AMENDED**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**..............................................................................................................**9**

**ARGUMENT** ....................................................................................................................**10**

**I. The FCA's *Qui Tam* Provisions Raise Serious Constitutional Issues**................................**10**

**II. The FCA Violates the Separation of Powers Doctrine.** ........................................................**14**

**III. The Relators are Granted Expansive Executive Authority**…..…………………………**16**

**IV. The "Office of the Relator" is a Permanent Office**…………....……………………….…...**18**

**V. The Unconstitutionality of the FCA is Based on Supreme Court Authority**…………....**21**

**VI. Relators' Second Amended Complaint Does Not Comply with the**
**Requirements of Rule 9(b)**…………………………………………………....……………**26**

**VII. The Pleading Standard**…………………………....……………………….………..**27**

**VIII. The Scope of the FCA Fraud Requirement**………………………………….…………**28**

**IX. Relators' Fraud Allegations Against Dr. Reyes Fail to Meet the Legal Standards**...…..**28**

**X. The Materiality Standard**…………………………………………………………………**31**

**XI. The Public Disclosure Bar Requires Dismissal**…………………....………….………..**32**

**XII. Relators' Reverse False Claim Action Fails Because there has been No Determination**
**that  Dr. Reyes is Indebted to Medicare**………………………………………..…………**34**

**Request for Oral Hearing**………………………………………………………………**36**

**Conclusion**…………………………………………………………………………………**36**

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Anderson v USAA Cas. Ins. Co.,* 221 FRD 250 (D.C.Cir. 2004)……………………………...35

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)………………………………………………..29

*Bell Atl. Corp, v. Twombly,* 550 U.S. 544 (2007)…………………………………..………27, 29

*Bender v. N. Am. Telecomms., Inc.,* 750 F.Supp. 2d 1(D.D.C. 2010)…………………………30

*Buckley v. Valeo*, 424 U.S. 1 (1976)……………………………………..……....16, 24, 25

*Ex parte Schreiber,* 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884)………………………..19

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)……… 18

*Freytag v. Comm'r*, 501 U.S. 868 (1991)……………………………………………………...20

*U.S. ex rel. Harman v. Trinity Indus. Inc.,* 872 F.3d 645 (5th Cir. 2017)………………….…..31

*Himmelman v. MCI Comm'ns Corp.,* 104 F.Supp. 3d 1(D.D.C. 2000)………………………30

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939 (1997)………….....………..17, 25

*Loving v. United States*, 517 U.S. 748 (1996)………………………………………………26

*Lucia v. SEC*, 585 U.S. 237 (2018)…………………………………………….………16

*Marbury v. Madison*, 1 Cranch 137 (1803)…………………………………………………16

*Morrison v. Olsen*, 487 U.S. 654 (1988)…………………………..………………....21, 22, 23

*Myers v. U.S.*, 272 U.S. 521………………………………………………………….14, 15

*New Mexico v. Musk*, 2025 WL 1502747………………………………….……………18

*Pencheng Si v. Laogai Rsch. Found.,* 71 F.Supp.3d 73 (D.D.C. 2014)………………………34

*Rockwall International Corporation v. United States,* 549 U.S. 457 (2007)…………………33

*Schindler Elevator Corp. v. U.S. ex rel. Kirk,* 563 U.S. 491 (2011)…………………….….33

*Searcy v. Philips Electronics North America Corp.*, 117 F.3d 154 (5th Cir. 1997)……….12, 23

*Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020)..........15, 18

*Stevens v. InPhonic, Inc.,* 662 F.Supp.2d 105 (D.D.C 2009).....................................27

*Trump v. United States*, 603 U.S. 593 (2024)..............…...………....……….....15, 16, 26

*Trump v. Vance*, 591 U.S. 786 (2020).............……………………………………...15

*Universal Health Servs. v. United States and Massachusetts, ex rel. Julio Escobar and Carme Correa*, 579 U.S. 176 (2016).............…………………………………………….............. 28, 31

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021).............……………………………….20

*United States v. Chattanooga Hamilton County. Hosp. Auth.*, 2024 WL 4784372 (E.D. Tenn. Nov. 7, 2024).............………………………………………………………………..25

*United States ex rel. Day v. Boeing*, 2025WL992708 (E.D. Vir. 2025)………….....……...11

*U.S. ex rel.  Digital Healthcare, Inc. v. Affiliated Comput. Servs., Inc.* 778 F.Supp. 2d 37 (D.D.C 2011).............………………………………………………………………………29, 30

*United States ex rel. Doe v. Credit Suisse AG,* 117 F.4th 155, 161-162 (4th Cir. 2024).…......12

*U.S. ex rel. Doe v. Staples, Inc.,* 932 F.Supp 2d 34 (D.D.C 2013).............……………………32

*United States v. Donziger*, 38 F.4th 290 (2nd Cir. 2022).............……………..……...18, 19

*United States v. DynCorp International LLC,* 253 F.Supp.3d 89 (D.D.C. 2017)……….......28

*United States ex rel. Folliard v. CDW Tech Services*, *Inc.,* 722 F.Supp.2d 20 (D.D.C. 2010)..28

*U.S. ex rel. Fuchs v. Johns Hopkins Univ.,* 2025 WL 958222 (D.D.C. Mar. 32, 2025)………35

*United States ex rel. Gardner v. Vanda Pharmaceuticals,* 2020 WL 2542121 (D.D.C. 2020)..28

*United States ex rel. Gose v. Native American Services Corporation*, 2025 WL 1531137 (M.D. Fla May 29, 2025).............…………………………………..……….……………..20

*United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000).........12, 14, 23

*U.S., ex rel. Hood v. Satory Global, Inc.*, 946 F.Supp.2d 69 (D.D.C. 2013)…………………19

*United States v. Germaine*, 99 U.S. 508, 511-512 (1878)…………………………………18

*U.S. ex rel. Kasowitz Benson Torres LLP v. BASF Corp.,* 285 F. Supp.3d 44 (D.D.C. 2017)..34

*U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715 (9th Cir. 1994)…………………=………………………………………...……………...12, 13, 14, 23

*U.S. ex rel McBride v. Halliburton,* 848 F.3d 1027, 1034 (D.C. Cir. 2017)…………………..31

*United States ex rel. Michaels v. Agape Senior Community, Inc*., 848 F.3d 330 (4th Cir. 2017)…………………………………………………………..……………………..12, 23

*United States v. NEC Corp.*, 11 F.3d 136 (11th Cir. 1993)…………..………………………19

*U.S. ex rel. PCA Integrity Assoc., LLP, v. NCO Fin. Sys. , Inc.,* 2020 WL 686009 (D.D.C. Feb. 11, 2020)……………………………………………………………………………………34

*United States, ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419……....11, 25

*U.S. ex rel. Scollick v. Narula,* 215 F.Supp. 3d 26 (D.D.C. 2016)……………………………35

*U.S. ex rel Totten v. Bombadier Corp.,* 286 F.3d 542 (D.C. Circuit 2002)……………………27

*U.S. ex rel. Uri Bassan v. Omnicare, Inc. CVS,* 2021 WL 1063784 (S.D. NY, March 19, 2021)……………………………………………………………………35

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.,* 389 F3d. 1251 (D.C. Cir 2004)….……...27

*U.S. v. Wood*, 2023 WL 6370877 (C.D. Cal 2023)………………………………….….………19

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1953)………………….………..16

**Federal Statutes**

31 U.S.C. § 3729…………………………..…….…………..….……………..9 11, 23, 25

31 U.S.C. § 3729(a)(1)……………………………………………………………………28

31 U.S.C. § 3729(a)(1)(A)……………………………………………………………….35

31 U.S.C. § 3729(a)(1)(B)……………………………………………………………….35

31 U.S.C. § 3729(a)(1)(G)………………………………………………………...23, 34

31 U.S.C. § 3730(b)……………………………………….......................9, 10, 23

31 U.S.C. § 3730(b)(1)…………………………………………………11,13, 23, 25

31 U.S.C. § 3730(b)(2)………………………………………………………….13

31 U.S.C. § 3730(b)(3)…………………………………………………….........10

31 U.S.C. § 3730(b)(4)(B)…………………………………………………….13

31 U.S.C. § 3730(c)………………………………………………….......10, 23, 24

31 U.S.C. § 3730(c)(1)…………………………………………………………….9

31 U.S.C. § 3730(c)(2)(A)……………………………………………….9, 11, 12, 23

31 U.S.C. § 3730(c)(2)(B)……………………………………………………...9

31 U.S.C. § 3730(c)(3)…………………………………………………...10, 11

31 U.S.C. § 3730(d)……………………………………………………….11, 23

31 U.S.C. § 3730(d)(2)………………………………………………………...11

31 U.S.C. § 3730(e)(4)(B)……………………………………………...32, 34

42 U.S.C. § 1320a-7k(d)(4)(B)……………………………………………...35

## U.S. Constitution

U.S. Const. Art. II……………………………………………..………..............9, 15, 16, 18, 24, 25

U.S. Const. Art. II § 1, cl. 1……………………………………….…………..…...9, 15, 18

U.S. Const. Art. II § 2, cl. 2…………………………………………………9, 15, 16, 24, 25

U.S. Const. Art. II § 3…………………………………..…………………...9, 22, 24, 25

## Federal Rules

Federal Rules of Civil Procedure Rule 8……………………………………………27, 35

Federal Rules of Civil Procedure Rule 9(b)……………………..……...26, 27, 30, 35

Federal Rules of Civil Procedure Rule 12(b)(1)………………………………………9, 26

Federal Rule of Civil Procedure 12(b)(6)…………………………………………..29

Federal Rules of Civil Procedure Rule 25………………………………………………20

Federal Rules of Civil Procedure Rule 41(a)…………………………………………12

**Other Authorities**

Claire M. Sylvia, *The False Claims Act: Fraud Against the Government* (2004)………………19

1 Annals of Congress, 581………………………………………………………………14

1 ANNALS OF CONG. 497 (1789)………………………………………………………...15

1 ANNALS OF CONG. 499 (1789)………………………………………………………...20

Ethics in Government Act of 1978……………………………………………………… 21, 22

*Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, (2007)…………………………………………………………………………...……...19

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1954 (3d ed.)…………………………..…...19

## INTRODUCTION

Article II of the Constitution that provides: "The executive Power shall be vested in a President of the United States of America," who shall appoint all "Officers of the United States and who must also "take Care that the laws be faithfully executed." U.S. Const., Art. II, § 1, cl. 1; Art. II § 2 cl. 2; and Art. II § 3. The False Claims Act (FCA), 31 U.S.C. §§ 3729 – 3733 *qui tam* provisions give private citizens (Relators) the right to bring and to conduct a cause of action on behalf of the United States even when, as here, the government elects not to proceed with the action. 31 U.S.C. § 3730(b); *id*. (c)(3). The FCA prohibits the government (i.e. the Executive branch) from dismissing a cause of action without giving the Relator an opportunity to be heard. 31 U.S.C. § 3730(c)(2)(A). The FCA also requires that the government seek Court approval before it can settle a cause of action brought by a Relator. 31 U.S.C. § 3730(c)(2)(B). Moreover, the FCA *qui tam* provisions expressly prohibit the government from removing a Relator as a party to an action even when it elects to proceed with the action. 31 U.S.C. § 3730(c)(1). This broad grant of authority to private citizen(s) violates the Appointments Clause because it permits self-appointed Relators to wield significant executive authority and prohibits the President from removing this self-appointed Officers of the United States. Based on the fundamental constitutional separation of powers doctrine, this Court must grant this Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

If the FCA *qui tam* provisions were not an unconstitutional intrusion into the executive authority of the President, this cause of action would still fail because the Relators, Dr. Jasjit Walia and Dr. Preet Randhawa are not the original source of Second Amended Complaint misjoined hundreds of cardiologists across the country into a three-count complaint

that does not allege that the Relators have any first-hand knowledge of what Dr. Guillermo Reyes paid for radiopharmaceuticals. Far from having the inside knowledge necessary to maintain a False Claims Act ("FCA") action, Relators are simply unrelated physicians practicing in another state (Dr. Reyes is based on San Antonio, TX). Presumably because Relators have no connection with Dr. Reyes, the Complaint fails to plead the particular details of the alleged scheme to submit false claims. In fact, nowhere is Dr. Reyes's specific conduct identified in the Complaint. Moreover, the Complaint does not allege sufficient facts to state a plausible claim that Dr. Reyes violated the FCA by making materially false statements to the government.

## ARGUMENT

## I.

### The FCA's *Qui Tam* Provisions Raise Serious Constitutional Issues

The constitutional issues raised by the FCA *qui tam* provisions are easy to discern. First, the FCA allows for private citizens (Relators) to bring lawsuits on behalf of the United States for damages suffered only by the United States. 31 U.S.C. § 3730(b). In cases where the government elects to proceed with an action that was initiated by a Relator, the Relator maintains the right to continue as a party. 31 U.S.C. § 3730(c). In other words, the government cannot compel the removal of the Relator as a party even when it elects to proceed with the action. When the government elects not to proceed with an action within 60 days of its filing (or any extensions obtained)[1], the Relator "who initiated the action shall have the right to conduct the action." 31 U.S.C. § 3730(c)(3). When the government elects not to proceed with an action it can only intervene at a later date upon a showing of good cause. *Id*. However, any subsequent intervention by the government does <u>not</u> limit the status and the rights of a Relator to conduct the action. 31

---

[1] 31 § 3730(b)(2) and § 3730(b)(3).

U.S.C. § 3730(c)(3) (emphasis added). These Relators are permitted to seek and recover substantial civil penalties, 3 times the amount of the damages suffered by the government, and attorney's fees and costs. 31 U.S.C. § 3729(1)(g), 31 U.S.C. § 3730(d). The FCA compensates Relator(s) with an award ranging from 15 percent to 30 percent of the damages recovered depending upon the participation of the government in the lawsuit. 31 U.S.C. § 3730(d) and § 3730(d)(2)[2].

Moreover, the authority granted to Relators under the FCA is almost limitless because a Relator has the authority to bring suit on behalf of the United States for a violation of § 3729 that is committed against **any** government entity with the lone exception being cases involving "claims, records, or statements made under the Internal Revenue Code." 31 U.S.C. § 3730(b)(1) and § 3729(d) (emphasis added). In addition to granting a Relator the right to bring and maintain an action for § 3729 violations involving all government agencies with the exception of the IRS, the text of the FCA also restricts the government's ability to dismiss a Relator's cause of action beyond what is applicable to all other plaintiffs under Rule 41 of the Federal Rules of Civil Procedure. *United States, ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 436-437 and n. 4 (2023); and 31 U.S.C. § 3730(c)(2)(A). "The United States is not permitted absolute discretion" to dismiss a FCA complaint. "A district court must still examine two primary issues before granting a motion to dismiss at the pre-answer stage, by determining: (1) whether the United States has given reasonable substantive justifications for dismissal, and (2) whether granting dismissal without an evidentiary hearing would infringe upon the qui tam relator's constitutional due process or equal protection rights. *United States ex rel. Day v. Boeing*, 2025WL992708, pp. 11-12 (E.D. Vir. 2025) (citing *Polansky*, 599 U.S. at 437 n.4 and

---

[2] A Relator may receive an award of no more than 10% when the action is based on information disclosed in various proceedings or in the news media. 31 U.S.C. § 3730(d).

*United States ex rel. Doe v. Credit Suisse AG,* 117 F.4th 155, 161-162 (4th Cir. 2024)). "In this way, the district court adds Section 3730(c)(2)(A)'s gloss onto Rule 41(a)'standards for voluntary dismissals by plaintiffs. Only after determining that the United States has reasonably justified its motion to dismiss and that dismissal without a hearing would not violate the Relator's constitutional rights may the district court grant the United States' motion to dismiss the complaint." *Id.*

No court or even a causal reader of the FCA can deny that its plain text grants Relators a unique ability to bring and maintain an action that is not available to or enjoyed by all other federal court litigants. The text of the FCA favors giving Relators substantial rights to bring and maintain actions on behalf of the United States and both the tenor of that text and the structure of the statute has led to a split of authority on the issue of the government's right to object to a settlement. Compare *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 723 (9th Cir. 1994) (Held: "[T]hat the government's consent to dismissal is only required during the initial sixty-day (or extended) period in which the government may decide whether to intervene); with *United States ex rel. Michaels v. Agape Senior Community, Inc.*, 848 F.3d 330, 339 (4th Cir. 2017) ("We agree with the district court, and with the Fifth and Sixth Circuits, that the Attorney General possesses an absolute veto power over voluntary settlements in FCA qui tam actions") and *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000) ("We now join the Fifth Circuit in rejecting the Ninth Circuit's analysis, and hold that a relator may not seek voluntary dismissal of any *qui tam* action without the Attorney General's consent."); *Searcy v. Philips Electronics North America Corp.*, 117 F.3d 154, 159 (5th Cir. 1997)(Held: "The statutory language relied on by the government is as unambiguous as one can expect: "The action may be dismissed only if the court and the Attorney General give written

consent to the dismissal and their reasons for consenting." Unlike the *Killingsworth* court, we can find nothing in § 3730 to negate the plain import of this language).

In *Killingsworth*, the Ninth Circuit considered whether the United States had the "absolute right to block" an FCA settlement between a Relator and a defendant corporation without intervening. *Killingsworth*, 25 F.3d at 720.The government in *Killingsworth* argued that under "the plain terms of the False Claims Act, *qui tam*, actions may not be voluntarily dismissed over the objection of the Attorney General." *Id*. The Ninth Circuit first addressed the FCA's legislative history, and it concluded that Congress intended "to place full responsibility for False Claims Act litigation on private parties, absent early intervention by the government or later intervention for good cause, is fundamentally inconsistent with the asserted "absolute" right of the government to block a settlement and force a private party to continue litigation. *Killingsworth*, 25 F.3d at 721-722. However, the Ninth Circuit's holding in *Killingsworth* was not based merely on legislative history. The *Killingsworth* Court based its holding primarily on the text and structure of the FCA, and it determined that the express language of § 3730(b)(1) that requires Attorney General consent to a settlement "must be read in conjunction with" subsections (b)(2) and (c)(3), which allow the government to intervene, respectively, within the first sixty days or "at a later date upon a showing of good cause." *Killingsworth*, 25 F.3d at 722. In rejecting the government's assertion that it had an absolute right to object to a settlement when it elected not to intervene, the *Killingsworth* Court considered § 3730(b)(4)(B) to be "contradictory to the express language of § 3730(b)(4)(B), which gives the *qui tam* plaintiff "the right to conduct the action." The right to conduct a *qui tam* action obviously includes the right to negotiate a settlement in that action." Accordingly, based on the "format and intent of the amended statute (i.e. the FCA post 1986 Amendments)" the government no longer possesses the

"absolute right to bar a dismissal without intervention except during the first sixty days plus any extension granted after the private person has filed a *qui tam* complaint." *Id*. (cleaned up).

The *Killingsworth* opinion is a reasonable textual reading of the FCA that is emblematic of the issue regarding the overreaching power that the FCA grants to Relators. The issue of the extent of the involvement of the Attorney General in the settlement of an FCA action also raise constitutional issues regarding a possible infringement by the executive branch into Article III jurisdiction of federal courts. In *Health Possibilities*, the Sixth Circuit declined to follow the Ninth Circuit's view on objections to settlements, but the Court did acknowledge that to "the extent any separation of powers issues exist, they are not abated by limiting the consent provision to the sixty-day period. If the consent provision impermissibly infringes upon Article III jurisdiction, the constitutional harm is not cured by limiting the infraction to sixty days. *Health Possibilities, P.S.C.*, 207 F.3d at 343-344. The provisions of the FCA raise entirely too many constitutional issues to ignore. The most significant of which is the separation of powers issue concerning the powers of the President under Article II.

## II.

### The FCA Violates the Separation of Powers Doctrine

"'If there is a principle in our Constitution, indeed in any Constitution more sacred than another, it is that which separates the legislative, executive and judicial powers. If there is any point in which the separation of the legislative and executive powers ought to be maintained with great caution, it is that which relates to officers and offices.'" 1 Annals of Congress, 581.'" *Myers v. U.S.*, 272 U.S. 52, 116 (1926)(citing Madison, 1 Annals of Congress 581). The U.S. Constitution does not contain a separation of powers clause, but it is "undoubtedly carved into the Constitution's text by its three articles separation powers and vesting Executive power solely

in the President." *Trump v. United States*, 603 U.S. 593, 637-638 (2024) (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 227 (2020). "From this division on principle, the reasonable construction of the Constitution must be that the branches should be kept separate in all cases in which they were not expressly blended, and the Constitution should be expounded to blend them no more than it affirmatively requires. *Myers*, 272 U.S. at 116 (citing Madison, 1 Annals of Congress, 497). "The constitutional construction that excludes Congress from legislative power to provide for the removal of superior officers finds support in the second section of article 2." *Id*. at 126. "The phrase, 'But Congress may by law vest,' is equivalent to 'excepting that Congress may by law vest.' By the plainest implication it excludes congressional dealing with appointments or removals of executive officers not falling within the exception and leaves unaffected the executive power of the President to appoint and remove them." *Myers*, 272 U.S. at 127.

The separation of powers doctrine is at the very heart of the function of our democracy, as such it has been continually upheld as sacrosanct to the U.S. Constitution. Just last year Justice Roberts reiterated, in *Trump v. United States*, that "Article II of the Constitution provides that 'the executive Power shall be vested in a President of the United States of America.' Art. II § 1 cl. 1. The President's duties are of 'unrivaled gravity and breadth,' They include, for instance, commanding the Armed Forces of the United States; granting reprieves and pardons for offenses against the United States; **and appointing public ministers, and consuls, the Justices of this Court, and <u>Officers of the United States</u>**. *Trump v. United States*, 603 U.S. 593, 607 (2024) (citing *Trump v. Vance*, 591 U.S. 786, 800 (2020) and Art II § 2, cl. 2) (emphasis added and cleaned up). When, "the President's authority to act…stems from the Constitution itself," the exclusive authority of the President '**disables the Congress from acting upon the subject**.' And

the courts have no power to control [the President's] discretion when he acts pursuant to the power invested exclusively in him by the Constitution." *Id*. (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-638 (1953) and *Marbury v. Madison*, 1 Cranch 137, 166 (1803)); (emphasis added and cleaned up). The FCA allows for the self-appointment of private citizens to act Officers of the United States in violation of the exclusive powers of appointment granted to the President by Art. II of the U.S. Constitution.

### III

### The Relators are Granted Expansive Executive Authority

The framework for the determination of whether a Relator under the FCA is an Officer of the United States as opposed to being an inferior government agent concerns an examination of whether the Relator occupies a "continuing" position and most significantly, "the extent of the power an individual [Relator] wields in carrying out his assigned duties." *Lucia v. SEC*, 585 U.S. 237, 245 (2018). The application of that framework to the FCA provisions reveals that it created a perpetual appointment system whereby private citizens with no connection to the executive branch can bring and maintain lawsuits on behalf of the United States for any § 3729 violation. The extensive and indefeasible responsibilities bestowed upon private citizens by the FCA compel this Court to make the inescapable determination that the FCA violates Art. II, § 2, cl. 2 because it allows for the perpetual appointment of Relators as Officers of the United States. *Buckley v. Valeo*, 424 U.S. 1, 140 (1976) (holding that provisions of an Act that "vests responsibility for conducting civil litigation in the courts of the United States for vindicating public rights, violate Art. II, s 2, cl. 2, of the Constitution. Such functions may be discharged only by persons who are 'Officers of the United States'").

The expansive power wielded by Relators has been expressly recognized by the Supreme Court when it considered a case concerning the application of the 1986 amendments to the FCA. *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 948-949 (1997). In *Hughes Aircraft*, the Court was considering whether the 1986 Amendment that eliminated the government knowledge bar and allowed Relators to bring suit on behalf of the government even in cases where the government had possession of the knowledge but had not taken any action against any liable party could be applied retroactively. *Hughes Aircraft*, 520 U.S. at 948-949. The Court declined to apply the amendments retroactively. *Id.* at 952. In so holding, Justice Thomas wrote the opinion for a unanimous Supreme Court and he expressly recognized the significant impact that the 1986 Amendments had on the FCA by "permitting actions by an expanded universe of plaintiffs [Relators] with different incentives [i.e. different than the government], the 1986 amendment essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued." *Id.* (cleaned up). Justice Thomas questioned the propriety of the creation of "an expanded universe" of Relators given the fact that such individuals "are motivated by prospects of monetary reward than the public good." *Id.*  In a cautionary and almost prophetic manner, Justice Thomas concluded that the expanded authority granted to Relators would induce private citizens to bring "an action arguably based on a mere technical noncompliance with reporting requirements that involved no harm to the public fisc." *Hughes Aircraft*, 520 U.S. at 949.

The grant of power bestowed upon Relators to act on behalf of the United States is remarkable and the fact that the FCA does not allow for the removal of the Relator is even more remarkable. "The removal of executive officers was discussed extensively in Congress when the first executive departments were created. The view that 'prevailed, as most consonant to the text

of the Constitution' and 'to the requisite responsibility and harmony in the Executive
Department,' was that the executive power included a power to oversee executive officers
through removal; because that traditional executive power was not 'expressly taken away, it
remained with the President.'" *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477, 492 (2010) (citing Letter from James Madison to Thomas Jefferson (June 30,
1789), 16 Documentary History of the First Federal Congress 893 (2004)). Neither the right of
removal nor the separation of powers doctrine are explicitly included in the Constitution,
however, these "foundational doctrines are instead evident from the Constitution's vesting of
certain powers in certain bodies. As we have explained many times before, the President's
removal power stems from Article II's vesting of the "executive Power" in the President. *Seila
Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020) (citing *Free
Enterprise Fund*, 561 U.S., at 483, 130 S.Ct. 3138 (quoting Art. II, § 1, cl. 1)). The FCA violates
both the right of removal and the separation of powers doctrine because it grants a Relator
significant governmental authority while at the same time denying the President the ability to
remove a Relator.

## IV.

### The "Office of the Relator" is a Permanent Office

To determine if the position of Relator is a "sufficiently continuing to constitute an
office," Courts are instructed to take a "holistic approach focusing on a position's 'tenure,
duration, emolument, and duties,' and whether the duties are 'continuing and permanent, not
occasional or temporary." *New Mexico v. Musk*, 2025 WL 1502747, *23 (citing *United States v.
Donziger*, 38 F.4th 290, 296 (2nd Cir. 2022) *cert denied*, 143 S.Ct. 868 (2023) and *United States
v. Germaine*, 99 U.S. 508, 511-512 (1878)). "[T]hree factors that are helpful to consider in

determining whether a temporary position is an office: (1) the position is not personal to a particular individual; (2) the position is not transient or fleeting; and (3) the duties of the position are more than incidental." *Donziger*, 38 F.4th at 297. (citing *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 112–13 (2007)). Here, the Office of the Relator if you will, is not at all personal to the individual Relator. On the contrary, '[t]he few [district] courts that have considered the issue have concluded that the *qui tam* action survives the death of the relator. In such a circumstance, a personal representative of the relator's estate may proceed with the case." *U.S., ex rel. Hood v. Satory Global, Inc.*, 946 F.Supp.2d 69, 81 (D.D.C. 2013) (citing Claire M. Sylvia, *The False Claims Act: Fraud Against the Government*). The basis for the survival of an FCA claim is that the statute is both punitive **and remedial,[3]** and the general rule under federal common law is that rights of action under federal statutes survive a plaintiff's death if the statute is remedial, not penal. *Id*. at 80 (Citing *Ex parte Schreiber,* 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884); and Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1954 (3d ed.) ("It is still the rule that penal actions do not survive but courts generally have held that treble-damage provisions are remedial and that actions of that kind survive.")). The survival of an FCA claim is now well recognized by all courts. *See U.S. v. Wood*, 2023 WL 6370877, p. 4 (C.D. Cal 2023) ("an FCA claim survives a relator's death; citing *United States v. NEC Corp.*, 11 F.3d 136, 137–39 (11th Cir. 1993); and *Satory Global, Inc.*, 946 F. Supp. 2d at 81 (D.D.C. 2013)).

    The survivability of an FCA action establishes that the statute appoints a Relator to sue for any FCA violation and then allows for a second appointment of a personal representative this time by a state court with proper jurisdiction, subsequently the substitution of that personal

---

[3] The Supreme Court has clarified that the FCA is both punitive and remedial. *See Cook County, Ill. v. United States ex rel. Chandler,* 538 U.S. 119, 129–35 (2003).

representative as the new Relator is confirmed by the federal court before whom the FCA action was pending prior to the death of the original Relator. Accordingly, a Relator is appointed in violation of the Appointments Clause and upon his/her death, a subsequent Relator is appointed by a combination of state probate law, federal common law, and Rule 25 of the Federal Rules of Civil Procedure. "In essence, this arrangement amounts to two constitutional violations rather than one. Article II's 'chain of dependence' is broken not once, but twice. The Framers' limitations on the appointment power—intended to "ensure that those who wielded it were accountable to political force and the will of the people"—are circumvented all the way down." *United States ex rel. Gose v. Native American Services Corporation*, 2025 WL 1531137 p. 4 (M.D. Fla May 29, 2025) (Citing *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (quoting 1 ANNALS OF CONG. 499 (1789) (J. Madison) and *Freytag v. Comm'r*, 501 U.S. 868, 884 (1991)).

Not only does the FCA appoint a Relator and any subsequent heir as an Officer of the United States in violation of the Appointments Clause, but the position of a Relator is permanent because the FCA has no termination date. The FCA was first enacted in 1863[4] and it remains in effect today with no proposed date for its end. Moreover, the Relator's position cannot be considered transient or fleeting because a new Relator can bring a suit for a perceived FCA violation whenever he or she chooses. The complete inability of the President to remove a Relator is indicative of the permanent and continuing establishment of what can easily be referred to as the "Office of the Relator(s) of the United States."

---

[4] Act Mar. 2, 1863, c. 67, 12 Stat. 698; now 31 § 3729 et seq.

**V.**

**The Unconstitutionality of the FCA is Based on Supreme Court Authority**

The importance of the executive power of removal in this Court's consideration of the constitutionality of the FCA is exemplified in the opinion written by former Chief Justice Rehnquist in *Morrison v. Olsen*, 487 U.S. 654 (1988). In *Morrison*, the Court was considering the constitutionality of the independent counsel provisions of the Ethics in Government Act of 1978 (Act). *Id.* The Court found that the independent counsel was an inferior officer who was not subject to the Appointments Clause. *Morrison*, 487 U.S. at 671-673. In reaching the determination that the appointed "independent counsel" was an inferior officer and not an Officer of the United States, the Court highlighted "the fact that she (the independent counsel) can be removed by the Attorney General indicates that she is to some degree 'inferior' in rank and authority." *Morrison*, 487 U.S. at 671. Secondly, the Court considered the "limited duties" of the independent counsel and how its "role is restricted primarily to investigation and, if appropriate, prosecution of certain federal crimes. *Id.* Thirdly, the Court noted that the jurisdiction of the independent counsel is "[n]ot only … restricted in applicability to certain federal officials suspected of certain serious federal crimes, but an independent counsel can only act within the scope of the jurisdiction that has been granted by the Special Division pursuant to a request by the Attorney General." *Morrison*, 487 U.S. at 672. Finally, the Court found that the independent counsel was "temporary" in the "constitutional sense" because she was "appointed essentially to accomplish a single task, and when that task is over the office is terminated." *Id.*

The *Morrison* Court also considered whether the Ethics in Government Act (the Act) was "invalid under the constitutional principal of separation of powers." *Morrison*, 487 U.S. at 685. In so doing, the Court considered whether the Act's restriction on the power of the Attorney

General to remove the independent counsel only for good cause "impermissibly interferes with the President's exercise of his constitutionally appointed functions," and whether the Act as a whole "violates the President's ability to control the prosecutorial powers wielded by the independent counsel." The *Morrison* Court determined that the analysis of the President's removal power involves an analysis "of the functions served by the officials in issue." *Morrison*, 487 U.S. at 691. However, the Court indicated that the purpose of the analysis was to "ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed under Article II. *Id*. at 689-690.

The *Morrison* Court concluded that it was undeniable that the independent counsel was performing executive functions, but it held that the "good cause" limitation did not interfere with the President's constitutional duties to "take care that the Laws be faithfully executed" under Article II § 3. In so doing, the Court reiterated "the independent counsel is an inferior officer under the Appointments Clause, with limited jurisdiction and tenure and lacking policymaking or significant administrative authority." *Morrison*, 487 U.S. at 691. The *Morrison* Court also emphasized that because the Act in issue was "not a case in which the power to remove an executive official has been completely stripped from the President, thus providing no means for the President to ensure the 'faithful execution' of the laws." *Id*. at 692.

The *Morrison* Court provided a similar basis for its conclusion that the Act (the Ethics Act in Government Act) did not as a whole violate separation or powers. Specifically, the *Morrison* Court did not think that the Act "disrupts the proper balance between the coordinate branches [by] prevent[ing] the Executive Branch from accomplishing its constitutionally assigned functions." *Morrison*, 487 U.S. at 695. The *Morrison* opinion acknowledged that the

Act limited the executive authority of the Attorney General to engage in prosecutions conducted by the independent counsel. *Id*. at 695-696. However, the Court held that the Act did not impermissibly intrude on the powers of the Executive Branch despite the reduction in some executive powers, because of the all-important ability of Attorney General to remove the independent counsel for "good cause." *Morrison*, 487 U.S. at 696.

When the analysis used in *Morrison* is applied to the FCA the only logical conclusion is that it violates the separation of powers doctrine because of the expansive powers granted to the Office of the Relator and the inability of the President to remove a Relator as a party to a lawsuit. Indeed, the duties and jurisdiction of the Office of the Relator are virtually unlimited because Relators can decide for themselves what constitutes a § 3729 violation, they can file and maintain a lawsuit, obtain damages, penalties, attorney's fees and costs, and it matters not whether the Attorney General elects to intervene. 31 U.S.C. § 3730(b); § 3730(c); § 3729(a)(1)(G); and § 3730(d). Further, Relators are allowed to file a lawsuit for any alleged § 3729 violation(s) on behalf of all but one government agency, and the government does not have an absolute right to dismiss any such cause of action. 31 U.S.C. § 3730(b)(1); § 3729(d); § 3730(c)(2)(A). The text of the FCA grants Relators such expansive powers that it is unclear whether the Attorney General has the ability to object to a settlement reached by a Relator when the government elects not to intervene in a lawsuit within the 60-day period as is evident by the split of authority on that issue discussed herein above. See and Compare, *Killingsworth v. Northrop Corp.*, 25 F.3d at 723; with *Agape Senior Community, Inc*., 848 F.3d 330 at 339 (4th Cir. 2017) ; *Health Possibilities*, 207 F.3d at 339; and *Searcy*, 117 F.3d at 159.

Moreover, the Office of the Relator is not "temporary" in the constitutional sense because FCA lawsuits can be maintained for years. This suit was filed in 2018, and even if the Relators

pass away, this suit can be maintained by the personal representatives of the Relators. Also, as alluded to above, the FCA has been in effect for 162 years and it will continue to be in effect until these constitutional issues are addressed by the Supreme Court. Finally, and most importantly, the power of the President to remove a Relator as a party has "been completely stripped away" by the FCA. Even when the government elects to intervene in a lawsuit filed by a Relator, the Relator has the right to continue as a party to the action. 31 U.S.C. § 3730(c). For these reasons, anyone who serves as a Relator is an Officer of the United States who must be appointed by the President in compliance with Art II § 2 cl. 2 and Art. II § 3.

The same conclusion is reached when the Court considers the application of *Buckley v. Valeo*, 424 U.S. 1 (1976). In *Buckley*, the Court considered whether the appointment of members of the Federal Election Commission (FEC) by Congress violated Art. II and the separation of powers doctrine. *Buckley*, 424 U.S. at 51-52. As indicated herein above, the *Buckley* Court held that all members of the FEC must be appointed by the President and in so doing it reiterated what is rather fundamentally understood by lawyers, law professors and judges and that is that "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed." *Id.* at 138. (citing Art. II § 3). The *Buckley* Court found that the FEC had significant authority to bring civil litigation on behalf of the government concerning federal election issues and on that basis it held that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of that Article (i.e. Article II). *Buckley*, 424 U.S. at 126.

24

The authority of the Office of the Relator is much broader than that of the Federal Elections Commission ("FEC") in *Buckley*. First, in *Buckley*, the President appointed two of the six members of the FEC[5], but the Office of the Relator consists exclusively of self-appointed Officers of the United States. Also, the authority of the Office of the Relator to bring lawsuits on behalf of the government is not limited to a single department of the executive branch of government as was the case in *Buckley*. On the contrary, as is discussed herein above, a Relator can bring a suit for a violation of § 3729 on behalf of every government agency except the IRS. 31 U.S.C. § 3730(b)(1) and § 3729(d). Further, the self-appointed Relator decides for himself/herself what constitutes a violation, and he/she can bring a lawsuit against any person even for "a mere technical noncompliance with reporting requirements that involved no harm to the public fisc," that Justice Thomas cautioned about in *Hughes Aircraft*, 520 U.S. at 949. Further, the Relator is self-appointed.

The significant executive authority that the FCA provides to self-appointed individuals is undoubtedly an unconstitutional intrusion into the powers of the executive branch as provided in Art II § 2 cl. 2 and Art. II § 3. This is evident not from "selections of dissents, concurrences, and law review articles" as has been suggested by at least one court. *See United States v. Chattanooga Hamilton County. Hosp. Auth.*, 2024 WL 4784372 at *3 (E.D. Tenn. Nov. 7, 2024). The fact that Supreme Court Justices Kavanaugh, Barrett, and Thomas have expressed their concerns regarding the constitutionality of the FCA in a concurrence and a dissent is certainly a factor for the Court to consider here. *United States, ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 444 (2023). However, it is the basis for the Justices' concerns that must be considered by this Court. The concerns regarding the unconstitutionality of the FCE are

---

[5] *Buckley*, 424 U.S. at 113.

based on the longstanding basic "principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another." *Loving v. United States*, 517 U.S. 748, 755 (1996). When this Court considers the longstanding principle of the separation of powers doctrine in conjunction with the Supreme Court's current view of the expansive power of Presidency as expressed in no uncertain terms by Chief Justice Roberts in *Trump v. United States*, 603 U.S. 593 (2024), this Court is compelled to grant this Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the FCA is an unconstitutional intrusion into the powers of the President.

## VI.
## Relators' Second Amended Complaint Does Not Comply with the Requirements of Rule 9(b)

The courts have required complaints under the Federal Claims Act (FCA) to comply with the more stringent pleadings requirements of Rule 9(b), because the act is primarily a fraud statute. Dr. Reyes is one of hundreds of cardiologists added to this case by the amended complaint, yet there are no specific facts pled against him. Nor do Plaintiffs claim to have any special knowledge of Dr. Reyes' billing practices as to the radiopharmaceuticals in question. The only reference to Dr. Reyes, other than the list of defendants, is a publicly available list that indicates that Dr. Reyes did bill Medicare for the radiopharmaceuticals and the aggregate amount paid. Nothing more. Accordingly, this complaint must be dismissed as to Dr. Reyes because

- Relators fail to allege facts to support a fraud claim;

- Relators fail to allege facts to support a claim of materiality;

- Relators fail to allege facts to support their claim to be an initial source of information concerning Dr. Reyes' billing practices

- Relators reverse false claim fails because they fail to plead an existing obligation

## VII.

## The Pleading Standard

Rule 8 requires a complaint to "contain…a short and plain statement of the claim showing that the pleader is entitled to relief". The rule requires more than labels or conclusions. *Bell Atl. Corp, v. Twombly,* 550 U.S. 544, 555 (2007) But when a plaintiff alleges fraud, as when stating a claim under the FCA, Rule 9(b) requires "that the circumstances constituting fraud or mistake…be stated with particularity". *U.S. ex rel Totten v. Bombadier Corp.,* 286 F.3d 542, 551-52 (D.C. Circuit 2002)("because the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b).")

In *U.S. ex rel. Williams,v. Martin-Baker Aircraft Co.,* 389 F3d. 1251 (D.C. Cir 2004), the Court held that Rule 8 and Rule 9(b) must be read together and harmonized:

Combining Rules 8 and 9(b), we require that "the pleader state the time, place, and content of the misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud [citing cases]. We also require pleaders to identify individuals allegedly involved in the fraud." *Williams,* 389 F.3d *at* 424

In other words, to withstand a motion to dismiss for failure to plead an FCA claim with the degree of particularity required by Rule 9(b), "a complaint must… provide a defendant with notice of the who, what, when, where and how with respects to the circumstances of the fraud" *Stevens v. InPhonic, Inc.,* 662 F.Supp.2d 105, 114 (D.D.C 2009). Accordingly, the complaint must include the "time, place and content of the alleged misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud. *Williams, supra* 389 F.3d at 1256.

## VIII.

### The Scope of the FCA Fraud Requirement

To make out an FCA claim, a relator must show not only that the defendant submitted a claim, but also that the claim was false and that the defendant knew the claim was false. *United States ex rel. Folliard v. CDW Tech Services*, *Inc.,* 722 F.Supp.2d 20, 26 (D.D.C. 2010); *United States ex rel. Gardner v. Vanda Pharmaceuticals,* 2020 WL 2542121, at *7, (D.D.C. 2020) (not reported in Fed. Supp.).

Courts have read into the element of falsity a materiality component. *DynCorp,* supra at 98-99. Thus, an FCA claim requires the trifecta of falsity, materiality and scienter. *Vanda at *7.* Moreover, under the scienter requirement of the FCA, a defendant is liable only if he acted "knowingly." 31 U.S.C. § 3729(a)(1). The knowledge requirement is satisfied only when the defendant had actual knowledge that he was presenting a false claim or was deliberately ignorant of or recklessly disregarded the falsity. The Supreme Court has emphasized that this requirement is "rigorous" and should be "strict[ly] enforced" *Universal Health Servs. v. United States and Massachusetts, ex rel. Julio Escobar and Carme Correa*, 579 U.S. 176, 192 (2016). Thus that Dr. Reyes acted with the requisite scienter can only be established through allegations of what he did and said, not through a rote recitation of what laws relators allege he violated or mere conclusions.

## IX.

### Relators' Fraud Allegations Against Dr. Reyes Fail to Meet the Legal Standards

Plaintiff's Second Amended Complaint [SAC] barely mentions Dr. Reyes; it does not allege any specific instance of overbilling or any amount of overbilling. The only date mentioned is December 1, 2013, which is apparently when Novitas instituted its alleged pricing

28

policy, but has no reference to Dr. Reyes' medical practice or any instance of so-called fraud [ECF DOC 48 ¶ 78]. The complaint references Exhibit 1 which they allege "draws on the annual dataset that CMS periodically releases for Medicare Part B. reimbursement claims and payments" ECF DOC 48 ¶118. Dr. Reyes is mentioned in this document only at ECF DOC 48-1, p. 54 of 65. [Attached hereto as Exhibit 1 and highlighted for the convenience of the Court.] This document purports to state that between 2017 and 2022 Dr. Reyes billed for items HCPS Codes A9503 and A9500 and states the sum total of "Medicare reimb". There is nothing in this exhibit that sets out the specifics of any particular billing, much less any information about Dr. Reyes' intent or knowledge of any fraud. Relators do not attach any contracts relating to the actual cost of the pharmaceuticals or documents about how much Medicare was actually charged or how much it paid for any of the billings alleged submitted by Dr. Reyes. *See U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Comput. Servs., Inc.* 778 F.Supp. 2d 37, 53 (D.D.C. 2011)("Another shortcoming of the Amended Complaint is that it does not identify a single false claim submitted to the federal government for Medicaid reimbursement or any claim improperly paid by Medicaid") Relators rely solely on nothing but averages, innuendo and surmise. This, actually, is not surprising since relators have failed to allege that they have any relationship with Dr. Reyes other than they practice cardiology in totally separate practices and regions.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of a complaint for "failure to state a claim upon which relief can be granted". A complaint will be dismissed if it does not "state a claim to relief that is plausible on its face" which the reviewing court must accept as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) *quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Legal conclusions contained within the complaint are not subject to the maxim that everything in the complaint must be accepted as true for the purpose of

a motion to dismiss. *See Twombly, at 557.* The "…plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" *Ashcroft, supra at p. 678.* The court need not accept "unsupported assertions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations." *Himmelman v. MCI Comm'ns Corp.,* 104 F.Supp. 3d 1, 3.(D.D.C. 2000). And yet, this is all the relators have to offer.

Rather than alleging any information about specific claims or false certifications, Relators assert that "[e]very Defendant in Exhibit 1 engaged in the same scheme by billing Medicare at far above their acquisition cost for the RPs and by receiving average Medicare reimbursement of at least $100.00/dose. [SAC ¶ 116.]. But these collective allegations against the hundreds of physicians are improper and insufficient to meet the requisite pleading standards. *U.S. ex rel Bender v. N. Am. Telecomms., Inc.,* 750 F.Supp. 2d 1, 6 (D.D.C. 2010)("[A] complaint must make specific allegations against specific each individual defendant rather than collective allegations against each of the above-named Defendants, since one of the main rationales behind Rule 9(b)' s particularity requirement is to guarantee all defendants sufficient information to allow for preparation for a response")(internal quotations omitted)

Like the relator in *Digital Healthcare,* who alleged that the defendant caused tens of thousands of improper claims to be submitted to Medicaid but failed to specify a single representative claim among those tens of thousands, Relators here fail to specify a single representative claim among the more than 600 claims they assert Dr. Reyes submitted to Medicare. *Digital Healthcare,* 778 F.Supp. 2d at 53. Such failure to allege specific misconduct against Dr. Reyes warrants dismissal of their FCA claims against Dr. Reyes.

# X.

## The Materiality Standard

The gravamen of Relators' claim is that Dr. Reyes misrepresented the acquisition cost of the radiopharmaceuticals on his billing form, thus causing Novitas to overpay at the governments expense.  Their burden is to allege and prove that, but for the misrepresentation, the claim would not have been paid and that Dr. Reyes knew the representation was material.  *Escobar, at 181.* Because the FCA is about fraud, not breach of contract, the materiality requirement is "rigorous" and "demanding".  *Escobar,* at 192, 194.

Conduct is not material just because it allegedly failed to comply with informal guidance materials published by Novitas online. *Escobar,* 579 U.S. at 194. Rather, to demonstrate materiality, Relators must show that Novitas likely would have refused to pay Dr. Reyes' claims had it known of his alleged billing practices. Otherwise, Dr. Reyes cannot be said to have defrauded Novitas into paying the claims by making misrepresentations (real or implied) about those billing practices. *Escobar,* 579 U.S. at 191-192.

This demanding standard might be met if Novitas "consistently refuse[d] to pay claims based upon billing practices like those alleged in the complaint. *Escobar,* 579 U.S. at 194-5. On the other hand, if Novitas paid claims "despite its actual knowledge" of Dr. Reyes' conduct or similar conduct by other cardiologists, that would be "very strong evidence of immateriality" *Ibid at* 194-5. Following *Escobar,* the weight of authority supports that continued payment of claims after becoming aware of the alleged noncompliance is strong evidence that the alleged conduct is immaterial. *See U.S. ex rel. Harman v. Trinity Indus. Inc.,* 872 F.3d 645, 665-8 (5th Cir. 2017); *U.S. ex rel McBride v. Halliburton,* 848 F.3d 1027, 1034 (D.C. Cir. 2017).

The complaint does not allege that Novitas regularly denied claims based upon conduct similar to that alleged against Dr. Reyes. On the contrary, the complaint relies upon the fact that Novitas <u>continued to pay the claims</u> resulting in an alleged overpayment.  [ECF DOC 48 ¶¶150, 160-163].  Ex. 1 to the complaint shows conclusively that Novitas paid the allegedly false claims through at least 2022.  The Government has been aware of Relator's allegations since the filing of Relator's original complaint in 2018.  Relators do not allege that Novitas did not always know the acquisition cost of the radiopharmaceuticals. According to the complaint, and common sense, Novitas processes similar claims throughout multiple states. This demonstrates that the informal price guidance issued by Novitas was not material.  Further, the fact that Novitas continued to process these claims illustrates that Dr. Reyes could not have known he was making a false claim under the FCA. Additionally, nowhere in the complaint is it alleged that Novitas ever informed Dr. Reyes that he had a billing problem.

## XI.

## The Public Disclosure Bar Requires Dismissal

The FCA is at heart a "whistle blower" claim statute. The FCA 31 USC §3730(e)(4)(B) "divests the courts of subject matter jurisdiction based upon the public disclosure of allegations or transactions in specified public channels, unless …the person bringing the action is an original source of the information.  *U.S. ex rel. Doe v. Staples, Inc.,* 932 F.Supp 2d 34, 39 (D.D.C. 2013) *affirmed* 773 F.3d 83 (D.C.Cir. 2014). An original source is a "plaintiff with 'direct and independent knowledge' of the relevant facts who has revealed his knowledge before public disclosure and before filing suit. *Ibid.*  The public disclosure bar "is triggered where there is sufficient information in the public domain to have alerted law-enforcement authorities to the likelihood of wrongdoing" *Ibid.*  The question whether the Relators are an original source is

jurisdictional and thus subject to decision on a Motion to Dismiss. *Rockwall International Corporation v. United States,* 549 U.S. 457, 467-470 (2007).

The D.C. Circuit employs a two-part test in evaluating whether the public disclosure bar applies. *Doe at 39.* "First, the court must evaluate whether the relators' claims are based upon 'allegations or transactions which were 'public[ly] disclosed 'in a 'criminal, civil or administrative hearing, in a congressional, administrative or General Accounting office report, hearing, audit or investigation, or from the news media.'" *Ibid.* Courts broadly construe the term "news media" to include readily accessible websites, and the term "administrative report" within the meaning of the statute. *See also Schindler Elevator Corp. v. U.S. ex rel. Kirk,* 563 U.S. 491, 408 (2011)(applying a broad meaning to the terms "report" and "transactions". Holding that an FOIA response is a report) "Second, the Court must evaluate whether the relator fits within the "original source exception" *Doe,* 932 F.Supp.2d at 39.

Here, Relators rely almost entirely on publicly available information from the annual dataset that CMS releases periodically for Medicare Part B reimbursement claims and payments. SAC ¶118. Indeed, Relators obviously have chosen the defendants solely on information on the CMS's public database. Certainly, the only information concerning Dr. Reyes is in the database. No doubt, this database constitutes "news media" or a "report" for the purpose of the public disclosure bar.

Relators seek to avoid dismissal by asserting that <u>proposed</u> contracts for the radiopharmaceuticals contained confidentiality provisions. But they don't allege that all such contracts had these provisions nor that Dr. Reyes entered into such an agreement. Whether these provisions are actually enforced is not pled. Relators then contradict themselves when the allege that they investigated and determined that prices for the radiopharmaceuticals were available

nationwide for prices far below $100.00/dose. SAC ¶¶ 89, 100, 108. Obviously, if Relators are being truthful, the pricing is not at all confidential.

Nor do Relators sufficiently allege that they fit within the original source exception. Relators merely allege, without factual support, that they "are original sources of the information provided herein within the meaning of 31 U.S.C. §3730(e)(4)(B)" SAC ¶ 14. This conclusory allegation is insufficient to establish the original source exception. Obviously, Relators do not argue that they were the original source for the CMS database Ex. 1. Because the public bar disclosure applies, Relators complaint against Dr. Reyes must be dismissed.

## XII.
## Relators' Reverse False Claim Action Fails Because there has been No Determination that Dr. Reyes is Indebted to Medicare

Relators bring a reverse false claim cause of action based upon 31 U.S.C. § 3729(a)(1)(G) which states in relevant part that a defendant is liable if it "knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government". The FCA defines an "obligation" as an "established duty whether or not fixed arising from...statute or regulation, or from the retention of an overpayment".

To state a reverse false claim, Relators are required to allege "specific obligations owed by" Dr. Reyes "that are distinct from the same allegations of concealment involved in the other claims." *U.S. ex rel. PCA Integrity Assoc., LLP, v. NCO Fin. Sys. , Inc.,* 2020 WL 686009, at *29 (D.D.C.Feb. 11, 2020); *Pencheng Si v. Laogai Rsch. Found.,* 71 F.Supp.3d 73, 96 (D.D.C. 2014)("[B]ased on what little else the amended complaint says about the alleged grant funding, Relator has failed to plead with sufficient specificity the particular monetary obligation that Defendant owed to the government in a manner that would support a finding of *any* type of actionable obligation in this case"; *U.S. ex rel. Kasowitz Benson Torres LLP v. BASF Corp.,* 285

34

F. Supp.3d 44, 53 (D.D.C. 2017), *affirmed* 929 F.3d 721 (D.C. Cir. 2019)(finding no "obligation" to pay the government).

Moreover, Relators reverse false claim count fails because "it relies on the same conduct to support his presentment and false statement claims". *U.S. ex rel. Fuchs v. Johns Hopkins Univ.,* 2025 WL 958222 (D.D.C. Mar. 32, 2025); *U.S. ex rel. Scollick v. Narula,* 215 F.Supp. 3d 26, 41 (D.D.C. 2016) ("by this logic, just about any traditional false statement or presentment action would give rise to a reverse false claim action; after all, presumably any false statement actionable under sections § 3729(a)(1)(A) or § 3729(a)(1)(B) could theoretically trigger an obligation to pay the fraudulently obtained money."

Essentially, Relators claim that the filing of their complaint suffices to create an obligation to pay the government. SAC ¶ 162. This is a truly novel claim, not supported by the case law.  For one thing, the Second Amended Complaint does not state an amount supposedly owed.  Since Dr. Reyes would have to guess, the pleading requirements of Rules 8 & 9(b) have not been met. *Anderson v USAA Cas. Ins. Co.,* 221 FRD 250, 253 (D.C.Cir. 2004).

Relators refer to *U.S. ex rel. Uri Bassan v. Omnicare, Inc. CVS,* 2021 WL 1063784 (S.D. NY, March 19, 2021) in support of their position.  But that case is distinguishable on its facts. There, the defendant had been put on notice of its violations "multiple times by internal, state and other third-party audits which were conducted within the relevant period" *Bassan at 12.* In our case, Relators do not plead that any payment has been contested by Medicare or that any entity has determined that Dr. Reyes owes anything to the government.

Finally, we note that Relators have ignored the provisions of The Affordable Care Act, 42 U.S.C. § 1320a-7k(d)(4)(B) which defines an overpayment subject to the FCA as applicable only after a "reconciliation".  *See Omnicare at *12.* Relators have not pled the necessary

reconciliation to trigger the act. Accordingly, the reverse false claims count should be dismissed.

## **Request for Oral Hearing**

Pursuant to LCvR 7(f), Dr. Reyes respectfully requests an oral hearing on the issues raised in this Motion to Dismiss.

## **Conclusion**

For the foregoing reasons, Dr. Reyes respectfully requests that this honorable Court dismiss Relators' claims against him in their entirety and with prejudice.

## **Certificate of Service**

Pursuant to LCvR 5.3, I hereby certify that on July 15, 2025, a true and correct copy of the foregoing document was served upon counsel of record via the ECF filing system.

**/s/ Adam C. Cortez**
ADAM C. CORTEZ