UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>*ex rel.* Jasjit Walia and Preet Randhawa, )<br>  )<br>    Plaintiff-Relators, )<br>  )<br>  )   Case No. 1:18-cv-00510-RJL<br>v. )<br>  )<br>Jose Alemparte, *et al.*, )<br>  )<br>    Defendants. )<br>_____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS DR. JOSE DIAZ'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant Dr. Jose Diaz ("Dr. Diaz") respectfully asks this Court to dismiss the Second Amended Complaint ("Complaint") filed by Relators Jasjit Walia and Preet Ranghawa under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Complaint fails as a False Claims Act ("FCA") action because it is premised on speculation, publicly available information, and an absence of any direct knowledge regarding Dr. Diaz's specific business practices, acquisition costs, or billing procedures.

**I.   INTRODUCTION**

This case exemplifies precisely the opportunistic, parasitic litigation that Congress never intended the FCA to encourage. Rather than representing genuine whistleblowing by insiders who directly know fraudulent conduct, this lawsuit represents an attempt by unrelated doctors practicing in a different state to monetize publicly available Medicare

payment data by constructing elaborate fraud theories based on their own separate buying experiences.

Relators are cardiologists practicing in New Jersey who have never worked with, contracted with, communicated with, or had any business relationship with Dr. Diaz. Their allegations rest on: (1) a comparison between publicly available Medicare reimbursement data that any member of the public can obtain through Freedom of Information Act requests; (2) their own unrelated buying experiences with different vendors, under different contract terms, in different geographic markets; and (3) generic market research and pricing information. Such remote, secondhand theorizing cannot satisfy the rigorous pleading standards that courts have developed to prevent precisely this speculative FCA litigation.

The Complaint's deficiencies are clear from its structure and content. Rather than providing specific, particularized allegations about Dr. Diaz's individual conduct, the Complaint uses a "cookie-cutter" approach, making broad, generic allegations about hundreds of defendants collectively and trying to impute the alleged misconduct of some defendants to all defendants with no factual basis. This approach violates well-established principles requiring FCA complaints to plead fraud with particularity and to be based on direct, non-public information about the specific defendants' conduct.

## II.     RELATORS' ALLEGATIONS

This case illustrates why Congress built strict safeguards into the *qui tam* provisions of the False Claims Act to distinguish between legitimate whistleblowing and opportunistic data mining. Relators Jasjit Walia and Preet Randhawa have tried to

transform publicly available Medicare payment information and their own unrelated buying experiences into a nationwide fraud conspiracy targeting hundreds of independent doctors, including Dr. Diaz with whom they have no connection.

### A. The Nature of Relators' Practice and Lack of a Relationship to Dr. Diaz.

According to the Complaint, Relators "regularly purchase radiopharmaceuticals for use in nuclear stress tests" and allege they "have been able to purchase sestamibi and tetrofosmin for less than $40/dose." Complaint ¶ 5.

Critically, the Complaint does not allege of any direct relationship, communication, interaction, or connection between Relators and Dr. Diaz. Relators have not:

- Worked at the same medical institutions as Dr. Diaz
- Participated in joint buying arrangements with Dr. Diaz
- Shared vendors or suppliers with Dr. Diaz
- Had any business dealings or communications with Dr. Diaz
- Observed Dr. Diaz's billing or buying practices
- Received any information from Dr. Diaz about their acquisition costs
- Been involved with Dr. Diaz's medical practices

This complete absence of any relationship is significant given that Dr. Diaz practice in different states and run independent medical practices with his own vendor relationships, purchasing agreements, and billing procedures.

### B. The Speculative Nature of Relators' Allegations.

The Complaint's allegations regarding Dr. Diaz are speculative and based on assumptions rather than direct knowledge. Relators' methodology seems to be:

3

1. Obtaining publicly available Medicare payment data showing what Medicare reimbursed various doctors for radiopharmaceuticals

2. Comparing those reimbursement amounts to what Relators themselves pay for radiopharmaceuticals in their own separate practice

3. Assuming that all doctors must have the same acquisition costs as Relators

4. Concluding that any reimbursement above Relators' acquisition costs must represent fraud

This approach is flawed and legally insufficient for many reasons that will be detailed below.

### C. The Complaint's Generic and Non-Specific Allegations.

Rather than providing particularized allegations about Dr. Diaz's specific conduct, the Complaint makes broad, sweeping statements about "Defendants" collectively. For example:

- "Defendants have collectively submitted hundreds of thousands of false claims" (¶ 7)

- "Every Defendant in Exhibit 1 engaged in the same scheme" (¶ 116)

- "Defendants regularly billed for and received Medicare reimbursement between approximately $100/dose and $1,100/dose" (¶ 6)

These generic allegations tell the Court nothing about Dr. Diaz's individual practices, knowledge, or conduct. The Complaint treats hundreds of independent doctors practicing in different states under different circumstances as a monolithic entity, which violates basic principles of fair notice and due process.

### III.     STANDARD OF REVIEW.

#### A.     Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

#### B.     Rule 9(b) Heightened Pleading Standard for Fraud.

Because the FCA is "self-evidently an anti-fraud statute," complaints brought under it must follow Rule 9(b)'s heightened pleading requirements. *U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002). Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

To meet Rule 9(b)'s requirements, an FCA complaint must allege "the time, place and content of the false misrepresentations, the facts misrepresented and what was retained or given up as a consequence of the fraud," and must "identify individuals allegedly involved in the fraud." *U.S. ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106,

5

117 (D.D.C. 2015) (citing *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

To withstand a motion to dismiss for failure to plead an FCA claim with the required particularity, "a complaint must... provide a defendant with notice of the who, what, when, where, and how with respect to the circumstances of the fraud." *Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 105, 114 (D.D.C. 2009). The reasoning for this heightened standard is to "afford defendants fair notice of plaintiffs' claims" and to "protect defendants from spurious charges of immoral and criminal behavior." *U.S. ex rel. Clausen v. Laboratory Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

### C. Requirements for Viable FCA Claims.

A relator must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 126 (D.C. Cir. 2015). To meet this requirement, the relator must allege "factual specificity concerning the type of fraud, how it was implemented, and the training materials used... corroborated by [a] concrete example... of overbilling." *Id.* The complaint must provide enough detail to distinguish the defendant's conduct from lawful conduct and to provide fair notice of the specific claims being asserted.

## IV. ARGUMENT.

### A. Relators' complete lack of connection to Dr. Diaz renders their fraud allegations implausible under federal pleading standards.

Relators have alleged no relationship with Dr. Diaz. This alone renders their fraud allegations implausible under *Iqbal*'s requirement that complaints "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint's failure to allege any connection between Relators and Dr. Diaz means it cannot provide the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* With no relationship, communication, or shared business dealings, Relators cannot plausibly claim knowledge of Dr. Diaz's acquisition costs, billing practices, or fraudulent intent.

#### 1. Relators do not qualify as original sources and, on this basis, lack standing under the FCA's jurisdictional requirements.

The FCA "was intended to encourage those who are either close observers or otherwise involved in the fraudulent activity to come forward" immediately. *U.S. ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 480 (D.C. Cir. 2016). Relators are neither close observers nor involved with Dr. Diaz's practices. Relators' complete separation from Dr. Diaz proves they lack the "independent and material knowledge of the information on which the allegations are based" that 31 U.S.C. § 3730(e)(4)(B) requires for original source status.

"Independent knowledge" is "knowledge that is not itself dependent on public disclosure" exposes the fatal flaw in Relators' case—their entire theory rests on publicly

7

available Medicare payment data that the government specifically releases for fraud detection purposes. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 656 (D.C. Cir. 1994). Relators cannot transform their status from public data miners into legitimate whistleblowers by adding their own buying experience, which provides no insight into Dr. Diaz's separate business operations.

### 2. Relators cannot gain "independent knowledge" from publicly available payment date and general industry experience.

Relators' try to combine publicly available payment data with their own industry experience falls squarely within the prohibited category that the Third Circuit rejected in *Schumann*, where courts "have repeatedly rejected the argument that a [relator's] knowledge is independent when it is gained through the application of expertise to information publicly disclosed." *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 240 (3d Cir. 2013). The *Schumann* court's emphasis that relators "must possess substantive information about the particular fraud" condemns Relators' approach because they have zero information about Dr. Diaz's "particular" practices. *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 845 (3d Cir. 2014).

### B. The complaint's generic, cookie-cutter allegations violate Rule 9(b)'s demand for particularized fraud pleading.

The Complaint's failure to provide any specific allegations about Dr. Diaz's individual conduct violates the requirement that FCA complaints must follow Rule 9(b)'s mandate to "state with particularity the circumstances constituting fraud." *U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); Fed. R. Civ. P. 9(b). The specification that complaints must allege "the time, place and content of the false

8

misrepresentations, the facts misrepresented and what was retained or given up as a consequence of the fraud" shows exactly what this Complaint lacks regarding Dr. Diaz. *U.S. ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 117 (D.D.C. 2015).

### 1. The complaint did not provide required specificity regarding about the individual defendants.

The requirement that complaints "provide a defendant with notice of the who, what, when, where, and how with respect to the circumstances of the fraud" exposes the Complaint's fundamental inadequacy regarding Dr. Diaz. *Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 105, 114 (D.D.C. 2009). The Complaint provides none of this required information because Relators know nothing about Dr. Diaz's specific practices:

> **Who**: The Complaint's lumping of Dr. Diaz with hundreds of other doctors without distinguishing their individual conduct violates the particularization requirement.
>
> **What**: Relators cannot specify what false statements Dr. Diaz made because they do not know Dr. Diaz's actual acquisition costs or billing practices.
>
> **When**: The Complaint's failure to provide specific dates when Dr. Diaz allegedly submitted false claims shows Relators' lack of direct knowledge.
>
> **Where**: Beyond general practice locations, Relators provide no information about where any alleged misconduct occurred.
>
> **How**: Relators cannot explain how Dr. Diaz implemented any fraudulent scheme because they know nothing about his billing procedures or business operations.

### 2. Relators improperly used a shotgun approach to lumped together multiple defendants.

Courts' consistent rejection of FCA complaints that "lump together" multiple defendants without providing specific allegations about each defendant's individual conduct directly applies to condemn this Complaint's shotgun methods. *U.S. ex rel. Conteh v. Ikon Off. Solutions, Inc.*, 103 F. Supp. 3d 59, 65-66 (D.D.C. 2015). The Complaint's statement that "Every Defendant in Exhibit 1 engaged in the same scheme" exemplifies this prohibited approach by treating independent doctors as undifferentiated wrongdoers with no factual basis.

### B. The Government's continued payment despite knowledge is "very strong evidence" of immateriality under Supreme Court precedent.

The Complaint's own allegations fatally undermine its materiality claims under the Supreme Court's *Escobar* framework, which showed that if the government pays claims "despite its actual knowledge" of alleged violations, that is "very strong evidence" of immateriality. *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194-95 (2016). The Complaint's acknowledgment that Novitas "will conduct random audits to validate the information provided on the claim" and has access to comprehensive Medicare payment data proves the government's knowledge of the alleged pricing disparities, yet Novitas continued paying claims for years.

### 1. The Supreme Court's emphasis on "rigorous" and "demanding" materiality standards dooms these claims.

*Escobar*'s emphasis that materiality is a "rigorous" and "demanding" standard designed to prevent the FCA from becoming "a vehicle for punishing garden-variety

10

breaches of contract or regulatory violations" directly condemns Relators' attempt to transform informal contractor guidance into the basis for treble damages. 579 U.S. at 192, 194. The Court's requirement that "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation" focuses attention on Novitas's continued payment behavior, which shows any alleged violations were not material to payment decisions. *Id.* at 191-92.

### 2   The application of the continued payment analysis supports dismissal.

The circuit courts' consistent application of *Escobar*'s continued payment analysis in cases like *Harman*, *McBride*, and others to dismiss FCA claims provides powerful precedent for dismissing these claims against Dr. Diaz. *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 665-68 (5th Cir. 2017); *U.S. ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1034 (D.C. Cir. 2017). The pattern of continued payment here provides even stronger evidence of immateriality because the government has been aware of Relators' specific allegations since 2018—yet continued processing claims.

### C.   The complaint's complete absence of scienter allegations fails rigorous knowledge requirements.

The Complaint's failure to allege any facts about Dr. Diaz's knowledge or state of mind violates the Supreme Court's emphasis in *Escobar* that the FCA's knowledge requirement is "rigorous" and should be "strict[ly] enforced." 579 U.S. at 192. The statutory definition requiring "actual knowledge," "deliberate ignorance," or "reckless disregard" under 31 U.S.C. § 3729(b)(1)(A) demands specific factual allegations that the Complaint lacks regarding Dr. Diaz.

11

### 1. Relators cannot disguise legal conclusions as factual allegations to meet scienter requirements.

The Complaint's conclusory statements that defendants "acted knowingly" are insufficient under *Iqbal*'s holding that courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 9(b)'s requirement that fraud allegations include the defendant's state of mind with particularity demands specific factual allegations about Dr. Diaz's knowledge, training, understanding of billing requirements, or awareness of potential violations—none of which the Complaint provides.

### 2. Relators have not alleged that Dr. Diaz knew or should have known that compliance with informal Novitas guidance was material to Medicare's payment decisions.

*Escobar*'s requirement that defendants must know that their alleged violations were material to payment decisions creates an additional hurdle that the Complaint cannot overcome. 579 U.S. at 181 ("What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."). The Complaint does not allege that Dr. Diaz knew or should have known that compliance with informal Novitas guidance was material to Medicare's payment decisions.

### D.   The complaint's failure to allege specific false claims violates Rule 9(b)'s particularity requirements.

The requirement that relators must allege that defendants actually submitted false claims to the government with enough particularity exposes another fatal flaw, which makes only conclusory allegations about claim submission without providing the factual

specificity that Rule 9(b) demands. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). The Complaint cannot identify specific false claims, submission dates, claimed amounts, or particular false statements because Relators do not know what Dr. Diaz actually claimed or whether their claims had any false information.

Statistical analysis and data mining cannot substitute for specific factual allegations about particular false claims. *U.S. ex rel. Wall v. Circle C Construction, LLC*, 813 F.3d 616, 622 (6th Cir. 2016). This directly condemns Relators' methods of comparing aggregate payment data to their own costs. This analysis fails to account for legitimate variations in acquisition costs, billing practices, and operational circumstances, making it insufficient to support fraud allegations that require particularized knowledge of specific misconduct.

### E. The Government's non-intervention after seven years of investigation strongly indicates lack of merit.

The Department of Justice's decision not to intervene against Dr. Diaz after nearly seven years of investigation, during which it had access to comprehensive discovery and internal documents unavailable to private relators, provides significant evidence that experienced prosecutors concluded these claims lack merit. The government's selective approach—settling with some defendants while declining to intervene against Dr. Diaz and many others—suggests that thorough investigation revealed meaningful differences between defendants' circumstances and that Dr. Diaz's conduct did not justify prosecution.

### F. This Court should dismiss with prejudice because Relators' structural lack of knowledge cannot be remedied.

The Complaint should be dismissed with prejudice because Relators' fundamental lack of any relationship with Dr. Diaz means they cannot obtain the direct knowledge necessary to plead viable FCA claims, despite additional amendment opportunities. This Second Amended Complaint shows multiple opportunities to cure deficiencies have not enabled them to provide the factual specificity that Rule 9(b) requires, because the structural problem of their remote relationship to Dr. Diaz cannot be solved through better pleading—it requires the direct knowledge that Relators simply do not have and cannot obtain.

Allowing continued amendment would reward precisely the speculative litigation that the FCA's safeguards are designed to prevent, while imposing substantial costs on practicing doctors who must defend against baseless allegations constructed from publicly available information and unsupported assumptions about how independent medical practices should operate.

### V. CONCLUSION AND PRAYER

This case presents a stark choice between preserving the False Claims Act's integrity as a tool for genuine whistleblowing and allowing its transformation into a vehicle for speculative litigation that rewards data mining over direct knowledge. The Complaint exemplifies precisely the opportunistic lawsuit that Congress sought to prevent when it built rigorous safeguards into the qui tam provisions—safeguards designed to distinguish between legitimate insiders who directly know fraud and remote

parties seeking to monetize publicly available information through unsupported assumptions.

Relators' complete disconnection from Dr. Diaz, combined with their reliance on publicly available Medicare payment data and their own irrelevant buying experiences, shows this action lacks the foundational knowledge that viable FCA claims require. Their inability to provide specific, particularized allegations about Dr. Diaz's individual conduct reveals not genuine whistleblowing but a try to construct a nationwide conspiracy theory from fragmentary public information and economic assumptions that ignore the realities of healthcare markets.

The policy implications of letting this litigation go forward extend far beyond this case. If courts accepted Relators' methods—comparing publicly available reimbursement data to unrelated buying experiences and inferring fraud from cost differences—it would open the floodgates to countless similar lawsuits targeting any healthcare provider whose costs differ from those of self-appointed benchmarks. This approach would transform the FCA from a surgical instrument for prosecuting specific fraud into a blunt weapon for attacking legitimate business practices based on incomplete information and flawed economic assumptions.

The healthcare system benefits when doctors can focus on patient care rather than defending against speculative fraud allegations constructed by strangers with no knowledge of their actual practices. The FCA's demanding pleading requirements and original source protections exist precisely to prevent the harassment that this lawsuit represents—where practicing doctors must spend substantial resources defending

15

against baseless allegations that no genuine whistleblower with direct knowledge would bring.

The government's decision not to intervene after seven years of investigation, during which experienced prosecutors had access to comprehensive discovery unavailable to private litigants, provides compelling evidence that those with the most complete knowledge of the alleged misconduct concluded that claims against Dr. Diaz lack merit. Respecting this prosecutorial judgment serves both judicial economy and the public interest in making sure FCA resources focus on genuine fraud rather than speculative theories.

The continued vitality of the *qui tam* system depends on courts' willingness to enforce the statutory safeguards that distinguish between legitimate whistleblowing and opportunistic litigation. Dismissing this Complaint with prejudice against Dr. Diaz would send a clear message that the FCA's protections have meaning and that courts will not permit the statute's noble purposes to be subverted by those seeking private gain through public data analysis.

For all these reasons, Dr. Diaz respectfully urge this Court to dismiss the Complaint with prejudice as to Dr. Jose Diaz, thus preserving the FCA's integrity and protecting legitimate healthcare providers from the speculative litigation that undermines both the statute's purposes and the broader public interest in maintaining a healthcare system focused on patient care rather than defending against baseless fraud allegations.

## REQUEST FOR ORAL ARGUMENT

Under Local Rule LCvR 7(f), Dr. Diaz asks for oral argument on this motion.

Date:  August 22, 2025                           Respectfully submitted,

| | |
|---|---|
| */s/ Thomas M. Craig* | Mary Olga Lovett, *Pro Hac Vice forthcoming* |
| Thomas M. Craig, D.C. Bar No. 494503 | **Mo Lovett Law** |
| **Fluet** | River Oaks Bank Building |
| 1751 Pinnacle Drive, Suite 1000 | 2001 Kirby Dr., Suite 700 |
| Tysons, VA 22102 | Houston, TX 77019 |
| T: (703) 590-1234 | T: (713) 589-5103 |
| F: (703) 590-0366 | mo@molovettlaw.com |
| tcraig @fluet.law | |
| e-file@fluet.law | *Counsel for Defendants Miltiadis Leon, Syed Umer, Jose Diaz, and Jawad Shaikh* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 22, 2025 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a true and correct copy of the same to all Counsel of Record.

*/s/ Thomas M. Craig*
Thomas M. Craig, Esq.