**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JASJIT WALIA and PREET RANDHAWA,<br><br>        Plaintiffs-Relators,<br><br>            v.<br><br>JOSE ALEMPARTE *et al.*,<br><br>        Defendants. | Case No.: 1-18-cv-00510-RJL |

## RELATORS' RESPONSE TO DEFENDANTS' STATUS REPORTS

Pursuant to the Court's August 25, 2025 Order, Plaintiffs-Relators Jasjit Walia and Preet Randhawa ("Relators") respectfully respond to Defendants' Status Report and Supplement to Defendants' Status Report filed on August 22, 2025 (ECF 429-430).

Relators respond to each of Defendants' proposals below. Where there is any disagreement between the parties, Relators offer further explanation to describe their position. But first, Relators provide a brief description of this litigation to contextualize their responses.

### I.    Overview of Relators' Claims and Litigation

On March 5, 2018, on behalf of the United States, Relators filed this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 ("FCA"). Relators allege that hundreds of doctors violated the FCA by overcharging Medicare for radiopharmaceutical products utilized in nuclear stress testing. (ECF 48 ¶¶ 1-5). The applicable Medicare requirement only permitted Defendants to bill Medicare for the acquisition cost of the radiopharmaceuticals. *Id.* Defendants certified compliance with this requirement each time they submitted reimbursement claims to Medicare. *Id*. ¶¶134-136. Nonetheless, in direct violation of that simple rule, Defendants allegedly billed Medicare at much higher rates.

Accordingly, Relators allege that Defendants submitted false claims and false records in violation of the FCA. *Id*. ¶¶ 126-143, 164-172 (citing 31 U.S.C. § 3729(a)(1)(A)-(B)). Relators further allege that Defendants separately violated the FCA by failing to return overpayments received from Medicare even after learning that they have overcharged Medicare. *Id*. ¶¶ 160-163, 173-175 (citing 31 U.S.C. § 3729(a)(1)(G)).

As required by the FCA, Relators initially filed this lawsuit under seal to provide the Government with an opportunity to investigate Relators' claims. (ECF 1). The Government's investigation led to 16 settlement agreements under which "cardiology practices and associated physicians, located across 12 states … agreed to pay amounts totaling $17,761,564 to resolve allegations that they each violated the False Claims Act by overbilling Medicare for diagnostic radiopharmaceuticals."[1] Accordingly, Relators' lawsuit has already resulted in a substantial recovery for Medicare arising from overbilling for the radiopharmaceuticals at issue.

The Government subsequently notified the Court that it declined to intervene as to the remaining defendants. (ECF 33). In April 2025, with the Court's permission, Relators filed the now-operative Second Amended Complaint. (ECF 48).

On July 22, 2025, the Court directed Defendants to present a "proposed plan for streamlining this case," including with respect to "managing the representation of the many defendants, appearing at hearings, setting a briefing schedule, and otherwise handling case management logistics." (July 22, 2025 Minute Order). On August 22, 2025, Defendants filed two responsive status reports. (ECF 429, 430). The Court directed Relators to respond (Aug. 25, 2025 Minute Order), and Relators now do so.

---

[1] DOJ, *Sixteen Cardiology Practices to Pay a Total of $17.7M to Resolve False Claims Act Allegations Concerning Inflated Medicare Reimbursements* (Dec. 20, 2024), *available at* https://www.justice.gov/archives/opa/pr/sixteen-cardiology-practices-pay-total-177m-resolve-false-claims-act-allegations-concerning.

## II.    Relators' Responses to Defendants' Proposals

Relators respond to each of Defendants' proposals, noting any disagreements with Defendants and providing further explanation where appropriate.

### 1.    Identification of Various Categories of Defendants

| Defendants' Proposal | Relators' Response |
|---|---|
| Within fourteen (14) days of the entry of a scheduling order, Relators shall file notice with the Court identifying: (1) unrepresented Defendants, i.e., each Defendant believed to have been served with a summons and amended complaint for whom no attorney has entered an appearance by that date; (2) Defendants to be dismissed voluntarily, i.e., Defendants who Relators have identified or intend to identify to the U.S. Department of Justice seeking consent to their dismissal; and (3) all Defendants whom Relators intend to remain in the litigation. | Within *twenty-one (21) days* of the entry of a scheduling order, Relators shall file notice with the Court identifying: (1) unrepresented Defendants, i.e., each Defendant believed to have been served with a summons and amended complaint for whom no attorney has entered an appearance by that date; (2) Defendants to be dismissed voluntarily, i.e., Defendants who Relators have identified or intend to identify to the U.S. Department of Justice seeking consent to their dismissal; and (3) all Defendants whom Relators intend to remain in the litigation. |

Relators request 21 days from entry of a scheduling order to identify these categories of Defendants. Relators do not believe that the modest amount of additional time will materially affect this litigation, and it will allow Relators to more fulsomely and accurately identify each category of Defendants.[2]

### 2.    Motions to Dismiss

| Defendants' Proposal | Relators' Response |
|---|---|
| Within forty-five (45) days of the entry of a scheduling order, a. Defendants electing to participate will file an omnibus motion to dismiss addressing issues relevant to all defendants. These issues will | Within forty-five (45) days of the entry of a scheduling order, a. Defendants electing to participate will file an omnibus motion to dismiss addressing issues relevant to all defendants. These issues will |

---

[2] Relators note that identification of "Defendants to be dismissed voluntarily" can necessarily only include Defendants whom Relators **presently** intend to dismiss and would be without prejudice to Relators' ability to voluntarily dismiss additional Defendants within the limits established by Federal Rule of Civil Procedure 41(a)(1). *See U.S. ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 436 (2023) ("[N]othing in the FCA suggests that Congress meant to except *qui tam* actions from the usual voluntary dismissal rule.").

| | |
|---|---|
| include, among others, Relators' failure to plead the "circumstances of fraud" with particularity as required by Rule 9(b) and misjoinder.<br>b. Those Defendants who have previously filed motions to dismiss will file a notice advising the Court and Relators' counsel of objections or defenses raised in those motions that are not encompassed within the omnibus motion to dismiss and as to which a response from Relators will be required.<br>c. Defendants who wish to raise arguments, objections or defenses that are not encompassed within the omnibus motion to dismiss may file separate motions to dismiss, with supporting memoranda not to exceed eight (8) pages. These Defendant-specific arguments may include, among possible other arguments, that Relators' claims are barred by the statute of limitations.<br><br>No party will be deemed to have waived any right or defense by participating in the omnibus motion or by choosing not to file an individual motion. | include, among others, Relators' failure to plead the "circumstances of fraud" with particularity as required by Rule 9(b) and misjoinder.<br>b. Those Defendants who have previously filed motions to dismiss will file a notice advising the Court and Relators' counsel of objections or defenses raised in those motions that are not encompassed within the omnibus motion to dismiss and as to which a response from Relators will be required.<br>c. Defendants who wish to raise arguments, objections or defenses that are not encompassed within the omnibus motion to dismiss may file separate motions to dismiss, with supporting memoranda not to exceed eight (8) pages. These Defendant-specific arguments may include, among possible other arguments, that Relators' claims are barred by the statute of limitations. |

Relators disagree with Defendants' proposed non-wavier provision. As best Relators can tell, Defendants propose that they would not waive defenses by omitting them from the omnibus motion to dismiss or individual motions to dismiss. However, under Federal Rule of Civil Procedure 12(g)-(h), "if a party files a Rule 12(b) motion to dismiss, it may not subsequently assert any Rule 12(b) defenses that were available when the first Rule 12(b) motion was filed." *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 8 F. Supp. 3d 9, 13 (D.D.C. 2014*), aff'd,* 843 F.3d 958 (D.C. Cir. 2016) (quotation omitted)). Defendants offer no explanation why these standard waiver principles should not apply, and if anything, their enforcement is particularly important in a complex case with many defendants. *See Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 869 F. Supp. 35, 38 (D.D.C. 1994) (explaining that Rule 12's waiver requirements are designed "to eliminate unnecessary delays").

### 3. Motions to Dismiss – Opposition

| Defendants' Proposal | Relators' Response |
|---|---|
| Within forty-five (45) days of the filing of motions to dismiss, Relators shall file: (a) an opposition to the omnibus motion; (b) oppositions to any Defendant-specific motions not to exceed eight (8) pages; and (c) oppositions to arguments in previously filed motions to dismiss that were identified by any Defendant as not encompassed within the omnibus motion to dismiss with the oppositions not to exceed the number of pages devoted to the argument(s) in the previously filed motions to dismiss. | Within *sixty (60)* days of the filing of motions to dismiss, Relators shall file: (a) an opposition to the omnibus motion; (b) oppositions to any Defendant-specific motions not to exceed eight (8) pages; and (c) oppositions to arguments in previously filed motions to dismiss that were identified by any Defendant as not encompassed within the omnibus motion to dismiss with the oppositions not to exceed the number of pages devoted to the argument(s) in the previously filed motions to dismiss. |

Given the anticipated volume of motions to dismiss, Relators ask for 60 days to file their oppositions.

### 4. Motions to Dismiss – Reply

| Defendants' Proposal | Relators' Response |
|---|---|
| Within twenty-one (21) days of Relators' filing their oppositions to motions to dismiss, Defendants shall file: (a) a reply brief in support of the omnibus motion to dismiss; (b) as relevant, certain Defendants shall file reply briefs of no longer than five (5) pages in support of their Defendant-specific motions to dismiss; and (c) as relevant, certain Defendants who have previously filed motions to dismiss with arguments not encompassed by the omnibus motion may file reply briefs not to exceed half of the number of pages devoted to the arguments contained in their previously filed motions to dismiss. | Within twenty-one (21) days of Relators' filing their oppositions to motions to dismiss, Defendants shall file: (a) a reply brief in support of the omnibus motion to dismiss; (b) as relevant, certain Defendants shall file reply briefs of no longer than five (5) pages in support of their Defendant-specific motions to dismiss; and (c) as relevant, certain Defendants who have previously filed motions to dismiss with arguments not encompassed by the omnibus motion may file reply briefs not to exceed half of the number of pages devoted to the arguments contained in their previously filed motions to dismiss. |

### 5. Potential Amendment

| Defendants' Proposal | Relators' Response |
|---|---|
| In the event that Relators seek leave to amend their complaint again for any purpose, Relators will be required to tender a proposed amended complaint that includes and separately pleads, | Motions for leave to amend will be governed by Federal Rule of Civil Procedure 15(a) and Local Civil Rule 7.1(i). |

| | |
|---|---|
| as to each Defendant against whom Relators' propose to continue the action, a statement of facts sufficient to satisfy Fed. R. Civ. P. 9(b), including the who, what, when, where and how of the alleged fraud alleged against that Defendant and that Defendant's role in perpetrating the alleged fraud. This proposal is made without prejudice to and while reserving Defendants' rights to argue that leave to amend should be denied. | |

Under Federal Rule of Civil Procedure 15(a) and Local Civil Rule 7.1(i). "[t]o request the court's leave to amend, the plaintiff must file a motion requesting such relief and otherwise comply with the federal and local rules, including the requirement to file a copy of the proposed amended version with a motion for leave to file an amended pleading." *Singleton v. D.C.,* 2022 WL 4235128, at *6 (D.D.C. Sept. 14, 2022) (Leon, J.). Defendants' proposal repeats these existing requirements and is thus unnecessary. If Defendants mean to suggest any additional limitations beyond these requirements, Defendants offer no explanation why they would be appropriate or necessary. *Cf. BR v. D.C.,* 2024 WL 3724019, at **1, 5 (D.D.C. Aug. 8, 2024) (Leon, J.) (applying customary standard to motion for leave to amend in "long-running dispute").[3]

### 6. Case Management Deadlines

| Defendants' Proposal | Relators' Response |
|---|---|
| All other deadlines, including timeframes for discovery planning and conferences should be stayed pending further order of the Court. | See below. |

Without offering any explanation, Defendants seek an outright and indefinite stay of all

---

[3] Certain Defendants filed a "Supplement to Defendants' Status Report" to "supplement the [primary status] report with one critical portion that is not agreed." ECF 430 at 1. The disagreement is that these defendants "would oppose any further amendments to the complaint as futile, not in the interest of justice and judicial economy, and unduly prejudicial for defendants to file and refile motions to dismiss." ECF 430 at 1. It is unclear what, if anything, these Defendants are asking the Court to do at this juncture and how they can categorically state that any amendment would be futile before reviewing a proposed amendment. In any event, for the same reasons described above, no special rules governing potential motions for leave to amend are justified.

case management, initial disclosure, discovery, and other obligations that would normally attend the early stages of litigation. The Court directed the parties to provide "a proposed plan for **streamlining** this case." (July 22, 2025 Minute Order (emphasis added)). Defendants' proposal would have the opposite effect in that it would generate pervasive delay in litigation that is already seven years old.

To the extent Defendants suggest a stay is appropriate in light of the already-filed and forthcoming motions to dismiss, "[g]enerally, a pending motion to dismiss is not a good reason to stay discovery." *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.,* 2007 WL 9706653, at *2 (D.D.C. Aug. 31, 2007). In addition, a party seeking an exception from the general rule "has the burden of justification." *People With Aids Health Grp. v. Burroughs Wellcome Co.*, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991). Here, Defendants offer no explanation to even attempt to satisfy their burden.

Consistent with the Court's goal to streamline this litigation, Relators respectfully suggest the following:

- Any Defendant that does ***not*** join in the omnibus motion to dismiss or file an individual motion to dismiss is required to answer the Second Amended Complaint within 45 days of the entry of a scheduling order (the same timeframe proposed above for filing motions to dismiss).

- The parties will serve their Rule 26(a) initial disclosures within 60 days of the entry of a scheduling order.

- The parties will confer with respect to the submission of a confidentiality order and protocol governing electronically stored information (ESI). Relators will provide an initial draft to Defendants within 21 days of the entry of a scheduling order. Defendants will then

provide any objections or proposed edits within 21 days. The parties will subsequently meet and confer in an attempt to resolve any differences, and if they are able to do so, will present an agreed confidentiality order and ESI protocol for the Court's consideration. If not, the parties will submit their different proposals for the Court's considerations.

- Within 75 days of the entry of a scheduling order and without awaiting formal discovery requests, Defendants will produce representative examples of documents substantiating their acquisition cost for the radiopharmaceuticals at issue. Defendants will produce one representative example for each year in which they are alleged to have submitted false claims if the acquisition cost remained the same throughout the year, and if the cost changed during the year, one representative example for each time period in which they paid a different acquisition cost.[4] This should impose a very modest burden on Defendants since providers are obligated to maintain all "written and electronic documents … relating to … requests for payments" submitted to Medicare for at least 7 years from the date of service. *See* 42 CFR 424.516(f). Accordingly, it should be straightforward for Defendants to locate and produce these records.

- Within 150 days of the entry of a scheduling order, the parties will meet and confer with respect to the topics covered by Federal Rule of Civil Procedure 26(f)(2) and Local Civil Rule 16.3(c).

- Within 180 days of the entry of a scheduling order, the parties will submit to the Court the report required by Federal Rule of Civil Procedure 26(f)(3) and Local Civil Rule 16.3(d).

---

[4] For example, Defendants  may produce invoices from their supplier from whom they acquired the radiopharmaceuticals that shows the price they paid. (ECF 48 ¶¶ 47-57 (describing that providers acquire radiopharmaceuticals from third-party suppliers)).Defendants should produce representative examples for each year in which they are alleged to have submitted false claims.

In the report, the parties will explain any areas of disagreement.

Contrary to the delay that would result from an indefinite stay, Relators' proposal will streamline this litigation while imposing only mild obligations on the parties in the near term. For example, Defendants' production of information substantiating their acquisition cost for the radiopharmaceuticals will provide Relators and Defendants with a reliable means of more closely evaluating liability and damages. This, in turn, will facilitate settlement discussions or other potential resolution.

Relators' proposal accords with recognized best practices in complex litigation. In such cases, "[i]nitial discovery may also be targeted at information that might facilitate settlement negotiations or provide the foundation for a dispositive motion; a discovery plan may call for limited discovery to lay the foundation for early settlement discussions."[5] Such "[t]argeted discovery may be nonexhaustive, conducted to produce critical information rapidly on one or more specific issues." *Id.* Relators' proposal serves these aims and balances the parties' competing interests by limiting – but not eliminating – the parties' disclosure and discovery obligations and focusing the parties' efforts on the exchange of information and materials most likely to materially advance the litigation.

### 7. Remote Hearings and Defendant "Spokespersons"

| Defendants' Proposal | Relators' Response |
|---|---|
| Due to the large number of counsel currently appearing, Defendants respectfully request that all conferences and pretrial hearings in this matter be conducted by videoconference. To facilitate orderly proceedings, and without prejudice to the right of any Defendant's attorney to speak in Court on matters of importance, prior to each conference, | Relators take no position on this request. However, the Court may wish to consider appointing a Defendant-led leadership structure to formally coordinate any common pretrial activities on behalf of Defendants, similar to how steering committees are used in multi-district litigations (MDLs). *See* David L. Noll, *MDL As Public Administration*, 118 |

---

[5] Federal Judicial Center, *Manual Complex Lit.* § 11.422 (4th ed. 2004), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

| Defendants' counsel will meet beforehand, select spokespersons for subgroups of Defendants with common issues to raise with the Court, and identify those spokespersons and the issues they are prepared to address to the Court on the morning of the hearing. | MICH. L. REV. 403, 415 (2019) ("A prototypical case management order appoints a Plaintiffs' Steering Committee (PSC) that functions as a board of directors for plaintiffs, lead counsel who is charged with day-to-day management of the litigation..."). |
|---|---|

Dated: September 2, 2025

/s/ _Jonathan Z. DeSantis_

W. Scott Simmer (D.C. Bar #460726)
The Watergate, Suite 10-A
600 New Hampshire Avenue, NW
Washington, D.C. 20037
Telephone:202-333-4562
Facsimile: 202-337-1039
Email: ssimmer@baronbudd.com

**LAW OFFICE OF HENRY F. FURST**

Henry F. Furst (admitted _pro hac vice_)
One Claridge Drive
Verona, New Jersey 07044
Telephone: (973) 454-2620
Email: hfurst@hfurstlaw.com

**WALDEN MACHT HARAN & WILLIAMS LLP**

Daniel R. Miller (admitted _pro hac vice_)
Jonathan Z. DeSantis (admitted _pro hac vice_)
Walden Macht & Haran LLP
2000 Market Street, Suite 1430
Philadelphia, PA 19103
Tel: (215) 825-5283
Email: dmiller@wmhwlaw.com
Email: jdesantis@wmhwlaw.com

***Attorneys for Relators***